McCord, Appellant, vs. Edward Hines Lumber Company, Respondent.

*January 11—April 5, 1905.*

*Statute of frauds: Oral promise to answer for debt of another: Advances on logging contract.*

Plaintiff contracted with a corporation to cut and haul logs from his lands, it being understood that as the subcontractors needed supplies and money for the work plaintiff would make advances to them, to be deducted from the amounts becoming due from him to the principal contractor. Afterwards plaintiff sold much of the timber to defendant and assigned to it the logging contract so far as it affected the timber sold. This sale was in part tentative and dependent upon the result of investigation of titles, etc. For certain necessary advances to be made by plaintiff pending such investigation defendant orally agreed to reimburse him. *Held*, that this was not a promise to answer for a debt of the subcontractor to whom such advances were made, but was an original promise to repay sums of which defendant received the benefit, and hence was not within the statute of frauds.

Appeal from a judgment of the circuit court for Douglas county: A. J. Vinje, Circuit Judge. *Reversed.*

In October, 1899, the plaintiff and a corporation of which he was president, the McCord Lumber Company, owned and controlled a very large amount of timber tributary to Superior, and had made a general logging contract with the Bayfield & Western Railway Company, whereby the latter, through a series of years, was to cut, log, and haul the logs to the booms of the plaintiff tributary to his sawmill at Superior. Logging operations had already commenced, largely through the medium of subcontractors, who were employed by the railway company to do the cutting and loading on the cars. It was the contemplation and understanding between the railway company and McCord that, as these loggers needed supplies and small amounts of money for payment of

men quitting during the season, and such things, the plaintiff and his company should make such advances, and withhold the same out of the various instalments which might become due the railway company upon its contract as logs were delivered, such advancements being customarily necessary in order to enable the pushing forward of the logging, which was highly important to the owner of the logs. They would, of course, constitute payments on the railway company's contract liability to the loggers. On October 2, 1899, the McCord Lumber Company and the plaintiff entered into written contracts with the defendant of much complexity, but in substance transferring to the defendant the rights of plaintiff and his company to a very large amount of timber, the sawmill at which it was contemplated such logs should be sawed, and also the assignment of the McCord Company's contract with the railway company so far as it applied to any of the timber transferred to the defendant, whereby the defendant was to step into the place of the plaintiff and his company in the possession and operation of the sawmill and the ownership and receipt of the logs under the railway company contract, and also with reference to the payment of all sums due the railway company upon such contract. The transaction with the defendant involved the investigation of title and adjustment of incumbrances on a large amount of lands, and was in part tentative and dependent upon the satisfactory result of such investigation and arrangement as to securities. As the defendent well knew, upon a certain section 34 one Colbroth, as a subcontractor of the railway company, had already commenced logging operations, and was expected and desired by all to push them forward with vigor. Necessarily, at the time of consummating the contract of October 2, 1899, it became important for the defendant to examine many things, to visit the lands, develop the details of the logging operations, etc. At about this time it is claimed by the plaintiff that Colbroth

requested certain supplies, and certain advancements for supplies already received, and the like, and the plaintiff submitted to the defendant's agent such request, and was, by that agent, requested to go on temporarily as if he, the plaintiff, were still the owner, to make the advances necessary to keep the work running, such agent promising that as soon as the details of investigation, etc., were completed, the defendant would reimburse all such advances, if that timber were accepted, as it afterward was; the defendant, of course, having the opportunity to reimburse itself out of the sums which would come due to the railway company upon the delivery of the logs under its contract. Plaintiff also gave testimony that after the advances had been made and the transfers to defendant consummated defendant assented to and promised to repay all the advances specified in the complaint. The defendant and its agent denied making any such promises.

The issues of fact were submitted to the jury, who returned a verdict for the plaintiff in substantially the sum claimed by him, whereupon defendant moved for judgment notwithstanding the verdict, for the reason that the promise, if any was made by the defendant, was to pay the debt of another, to wit, Colbroth, and was not in writing. The court granted such motion and entered judgment dismissing the complaint, from which the plaintiff appeals.

For the appellant there was a brief by *Luse, Powell, deForest & Luse,* and oral argument by *L. K. Luse.*

*Solon L. Perrin,* for the respondent.

The following opinion was filed January 31, 1905:

DODGE, J. The jury having returned a verdict for plaintiff, judgment for defendant can be justified only if the evidence conclusively establishes that the defendant's promise was to answer for the debt or default of another, which, by subd. 2, sec. 2307, Stats. 1898, is void if not in writing. This provision comes to us from the original statute of

frauds, 29 Car. II, of which it has been said by an enthusiast that every line was worth a subsidy, and by a cynic that every line has cost a subsidy to interpret. The latter statement has been gaining force as the ingenuity of greed has, through centuries, been strained to escape this apparently plain provision, until its application is now surrounded by such a cloud of decisions as to defy exhaustive examination. In them, as might be expected, will be found reasoning and *dicta* well calculated to confuse exact lines of demarkation. Nevertheless such lines can be traced with reasonable certainty and distinctness. The promise voided by the statute is one to *answer* for the debt or default of *another*. Hence the statute has no application unless there be a primary obligation of some one else, and the promise be to answer for that as such. In other words, the promise must be collateral to and dependent upon the breach of a recognized obligation primarily owed by another. If such it be, however, it is void unless in writing. There are many *dicta* and some decisions indicating that this result may be escaped if there is a new consideration for the guaranty, or if such consideration consist of benefit to the guarantor. The statute, however, recognizes no such exception. There must, on general principles, be new consideration for the promise of indemnity in any event to render it valid, written or unwritten; hence to say that the existence of such consideration alone takes the promise out of the statute is to deny the statute any force whatever. 1 Brandt, Suretyship (2d ed.) § 60. Again, there are statements in the cases to support evasion of the statute if the leading object of the promisor is to benefit himself, or if the creditor principally relies on the guarantor. All such statements are misleading. None of such considerations will of themselves prevent the application of the statute if the promise is really to answer for the debt of another. Each of them may, however, serve as evidence in special cases to show that

the promise is really to pay an original obligation of the promisor, to which the statute offers no obstacle, however much such obligation may co-exist with or be measured by the debt of another. The existence of such original obligation will be found on careful analysis to be the true basis of most of the decisions where a new consideration has been given prominence. A few of the cases illustrating the situations in which the undertaking will be considered original, and not merely collateral to and dependent upon the third person's obligation, are the following: *Putney v. Farnham,* 27 Wis. 187; *Young v. French,* 35 Wis. 111; *Hoile v. Bailey,* 58 Wis. 434, 17 N. W. 322; *Lessel v. Zillmer,* 105 Wis. 334, 81 N. W. 403. An illustration of the reverse situation, where, although there was a new consideration involving benefit to the promisor, his promise was absolutely collateral—a mere guaranty of the debt of another—and therefore avoided by the statute, is *Commercial Nat. Bank v. Smith,* 107 Wis. 574, 93 N. W. 766.

The parties here negotiated and finally agreed upon a sale from plaintiff and his company to defendant of certain standing timber which the latter desired transformed into saw logs with all possible expedition. It was important that such transformation progress during the period of negotiation, examination of title, and arrangement of details. To that end it was necessary that some one make advances. When transfer was finally made at the prices fixed for standing timber, that timber had been advanced toward its next stage of saw logs to the extent of the logging work done in the interim, and was enhanced in value to an amount presumptively in excess of the advances made by plaintiff, and those advances were available as a credit upon the contract price for cutting and hauling the logs, which defendant had agreed to assume. Hence, upon final conveyance by plaintiff and his company, they transferred by their written contract the tim-

ber, but also the addition thereto resulting from partial trans-
formation into logs, and defendant thus received full and
adequate beneficial consideration for a promise to pay for
such addition or enhancement in value. The evidence cer-
tainly tends to support the view that, in addition to the
timber, defendant in November purchased ·from plaintiff the
enhancement of the same which his money had procured; or,
in another aspect, purchased his right to a credit upon the
railway company's logging contract to the amount of such
advancements, and agreed to pay him a price therefor. This,
of course, would be an obviously original promise to pay a
price for property purchased by the defendant, and would be
in no wise affected by the fact, if it existed, that Colbroth, or
any one else, might be indebted to plaintiff for those ad-
vances, for it would not necessarily be collateral to, or in any
wise dependent upon, either existence of such debt or default
therein by Colbroth. Indeed, if such debt existed, the trans-
action would, in effect, work a purchase of it by defendant,
not a guaranty of it. The promise was in terms, not to pay
what Colbroth owed, but to pay plaintiff certain sums because
he had advanced them and defendant had the benefit. No
reference was made to the fact that Colbroth owed a ·debt at
all, nor was the amount which defendant promised to pay at
all dependent on the amount which Colbroth owed. We are
convinced that the evidence fully justified the jury in find-
ing that defendant's promise was an original one to pay a
price for something of value which it received from plaintiff
and his company. They having so found by their general
verdict, the statute of frauds offered no obstacle to its va-
lidity.

A further test, which is often applied, is whether the thing
promised by the defendant is identical with the obligation
owed by the third person. If not—if it be to do something
different, though it may include some part or the whole of

the latter's obligation—it will ordinarily be deemed not a mere promise to answer for the debt of another, but an original undertaking not affected by the statute. Thus, indemnity to a surety upon a debt owed by the third person to a fourth has been held valid because the third person owed no debt to the surety, but merely might, on a contingency, become under obligation to him by implication of law, not to pay the debt, but to reimburse him in case he had to pay, while the defendant's promise was to protect him against the necessity of paying at all. Another illustration is where the owner of a machine warranted it to work to a certain standard, while the defendant agreed that it should work to the satisfaction of the plaintiff. This distinction, while in some conflict in other jurisdictions, has been fully adopted in Wisconsin. Browne, Stat. Frauds (5th ed.) §§ 161 *et seq.; Shook v. Vanmater,* 22 Wis. 532; *Vogel v. Melms,* 31 Wis. 306; *Hull v. Brown,* 35 Wis. 652. We deem such distinction applicable here, for in no view of the evidence can there be found any obligation resting on either Colbroth or the railway company to pay the plaintiff the amount of his advances. There is no express agreement to repay any part of them on any contingency. The agreement and understanding as stated by *McCord,* without dispute, was merely that any such advances should be treated as a payment upon the $3.50 per M. which he was bound to pay to the railway company for completed cutting and hauling of the logs. If there was any implied agreement of reimbursement, it went no further than to make plaintiff good in the ultimate contingency of his not receiving enough logs under that contract to satisfy his advances, or, perhaps, upon abandonment of the logging contract. Clearly he could not, at the time of his transaction with defendant, demand or sue for the amount of those advances as against Colbroth. Hence the promise of defendant to pay him that amount absolutely and without contingency

was in no wise identical with any debt or obligation owing from any third person, and on the authority of the above-cited cases is not within the statute of frauds.

For the reasons stated we must conclude that the action of the trial court in ordering and entering judgment for defendant was erroneous.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for plaintiff upon the verdict.

Upon a motion for a rehearing there was a brief by *Solon L. Perrin,* attorney, and *R. M. Bashford,* of counsel, for the respondent.

In reply to such motion there was a brief by *Luse, Powell, deForest & Luse,* for the appellant.

The motion was denied April 5, 1905.