DAY, Respondent, vs. MORGAN, Appellant.

*September 18—October 14, 1924.*

*Contracts: Frauds, statute of: Promise to pay claim if not pre-sented against estate: Transactions with deceased persons: Witnesses: Competency: Third person not participating in conversation.*

1. Where it is alleged that a daughter, to prevent the filing of a claim by her mother on a promissory note against her husband's estate, agreed to pay it if not filed, her sister was not, under sec. 4069, Stats., an incompetent witness, after the daughter's death, to testify that she had overheard such promise made.  p. 597.
2. The evidence in this case is *held* to support a verdict finding that successive agreements to pay such note had been made to induce the holder not to file it as a claim against the estates of persons liable.  p. 598.
3. In an action on the defendant husband's promise to pay such note if it was not filed as a claim against the estate of his deceased wife, evidence of reliance on such promise is *held* sufficient to make it a jury question.  p. 599.
4. A promise to answer for the debt of another, if founded on a new and sufficient consideration, need not be in writing and subscribed by the promisor.  p. 599.

APPEAL from a judgment of the circuit court for Jackson county: JAMES WICKHAM, Judge. *Affirmed.*

*E. S. Jedney* of Black River Falls, for the appellant.

For the respondent there was a brief by *Perry & Perry* of Black River Falls, and oral argument by *H. M. Perry.*

JONES, J.    On November 6, 1906, Walter Lambert executed and delivered a promissory note payable to the order of *Mrs. R. M. Day,* the plaintiff, for the sum of $450, payable two years after date, with interest.    The maker of the note died intestate May 9, 1909, in Grant county, Wisconsin, owning property of the value of $7,000.    His estate was probated in Grant county, and his widow, Alta A. Lambert, was appointed administratrix.    The plaintiff was then living at Mount Hope and had knowledge of the proceedings and of the time limited for filing claims against the estate.    She did not file the note as a claim against the estate for the reason, as claimed by the plaintiff, that her daughter, Alta A. Lambert, who afterward married the defendant, asked her not to file the claim and agreed to pay it.    Alta A. Lambert married the defendant in June, 1911.    They afterward lived in Jackson county, and the plaintiff lived with them part of the time.    Mrs. Morgan died intestate in February, 1917, leaving the defendant as her only heir and leaving property, as shown by the inventory, of the value of $14,778.30.    Letters of administration were duly issued to the defendant and the date for hearing claims was set for June 19, 1917.    The plaintiff did not file any claim against the estate of her daughter, giving as her reason that it was the only claim against the estate and that the defendant told her he would pay it.    There was testimony to the effect that Alta A. Lambert made an agreement with her mother that she would pay the note if it was not filed as a claim against the estate of Walter J. Lambert, and that she paid the interest due on the note during the remainder of her life.    These facts were stated in the complaint, with the statement that there had been paid to apply upon the principal the sum of $50.    The defendant, in the answer, denied upon information and belief the promise alleged by Alta Lambert and denied that he had ever made the promise alleged, and averred that the agreement claimed to have been made by

him was a special promise to answer for the debt of another person and was without consideration.

By special verdict the jury found that the two agreements set forth in the complaint were made as alleged; that the promise by the defendant was made before June 17, 1917; that it was not made on Sunday; and that the plaintiff relied on the same, and because of the promise refrained from filing a claim against the estate of Mrs. Morgan.

It was assigned as error that there was no credible evidence to support the answer as to either of the two alleged agreements to pay the note. In support of the agreement of the deceased to pay the note in case it was not filed against the estate of her husband, Walter Lambert, Mrs. Button, sister of Mrs. Lambert, testified that she heard her mother and sister talking about the subject and Mrs. Lambert told her mother that she wished she would not file it against the Walter Lambert estate, as it was the only indebtedness to be brought against the estate; and that if she would not file it she would see that it was paid. There was no conflict on this point. Objection to the testimony was made on the ground that Mrs. Button was her mother's agent and constructively participating in a conversation between the claimant and the deceased, and that the witness was incompetent under sec. 4069, Stats. There was evidence that Mrs. Button at times transacted business for her mother such as writing letters when requested. But the testimony was that at the time of this conversation she was not transacting any business for her mother. It does not appear that she in any way participated in this conversation between her mother and sister. She was merely a third party listening to a conversation between two persons, one of whom afterwards died. After hearing the evidence as to the situation and relationship of the three persons present during the conversation, the trial court admitted the testimony, holding that the witness was competent. This was

not error. *Wollman v. Ruehle,* 104 Wis. 603, 80 N. W. 919; *Holway v. Sanborn,* 145 Wis. 151, 130 N. W. 95.

To sustain the answer to the effect that the defendant agreed to pay the note if it should not be filed, proof was given as to two transactions between him and the plaintiff. The first was at the home of the defendant, and the plaintiff testified that she asked *Mr. Morgan* if he would pay the note. He said he could not then, but that after his sale he would pay it. The second conversation was at the Button house, and the plaintiff swore that the defendant was about to go to California and she called him into her room to see if they could not come to a settlement; that she told him that as he was going away and she was getting old and life was uncertain, she would like it if he would either pay the note or take it up and give her a new one; that he said he would not give a note; that after further conversation he said, " 'Hasn't my word always been as good as my note?' and I said, *'Robert,* I have always considered your word good, but if you will give me a note or pay this note it will be all right, it will be much better,' and he said he would not give a note, but he said he would pay the note, he said he would pay it in some way." The evidence was that plaintiff's daughter, Mrs. Button, was in the next room and the door was ajar. Mrs. Button testified that she heard only a part of the conversation as she stepped to the door to call the defendant; that she heard the defendant say "Isn't my word as good as my note?" and that her mother replied, "So far I have found it so." The defendant flatly denied that he ever promised to pay the note. He also denied certain statements made by Mrs. Button at a bank where the note was taken from the safety deposit box of the plaintiff. The issues of fact as to the promises of payment were fairly submitted to the jury and we see no reason for disturbing the verdict. It is urged that there was no evidence to sustain the answer that the plaintiff relied on the promise of the defendant and for that reason refrained from filing her

claim. It is true that there is no direct testimony of such reliance. But there is such evidence of her anxiety to have the claim adjusted and of the defendant's promise. The plaintiff on a former occasion had relied on a similar promise by her daughter knowing that without some agreement she would lose her right to collect the note if she failed to file it. Like many other women inexperienced in business she may have been reluctant to commence any proceeding in court, and it was natural that under the circumstances she should rely on the agreement by her son-in-law. Juries are not bound to rely only on direct evidence. They may draw conclusions and inferences from testimony and circumstances tending to establish the facts in issue.

It is also urged that the promise relied on was within the statute of frauds and without consideration. The appellant's counsel concedes the law to be that "the promise of one person, though in form to answer for the debt of another, if founded upon a new and sufficient consideration, moving from the creditor and promisee to the promisor, and beneficial to the latter, is not within the statute of frauds and need not be in writing subscribed by him and expressing consideration." *Commercial Nat. Bank v. Smith,* 107 Wis. 574, 83 N. W. 766; *Dyer v. Gibson,* 16 Wis. 557; *Rowell v. Smith,* 123 Wis. 510, 102 N. W. 1; *Blake v. Robinson,* 129 Iowa, 196, 105 N. W. 401. In our opinion this case comes clearly within this rule. Was there a consideration here? The promise, if made, was before the time for filing claims had expired. Since the defendant was the only heir of his widow and the estate was solvent, a failure to file the claim would have absolved the estate from any legal liability to pay the note, and the defendant would thus have received the whole estate free from one of the just debts of the decedent. The promise was very different from that of a mere surety or guarantor. It was not an ordinary collateral promise to pay the debt of another, but a direct agreement to pay a claim, which if the proper proceedings were taken

would be a charge on the defendant's own property. He had the right to waive that proceeding and personally assume the liability. We are satisfied that under the facts proven and found by the jury there was no failure of consideration. Although there were other assignments of error they were of less importance than those we have discussed, and we find as to them no error in the rulings of the court.

*By the Court.*—Judgment affirmed.