IOWA COUNTY BANK, Respondent, vs. GRABER, Appellant.

*December 7, 1925—March 9, 1926.*

*Joint adventurers: Father and son engaging in cattle business: Evidence: Sufficiency: Statute of frauds: Promise to pay the debt of another: Consideration: Adequacy:* Incidental benefit.*

1. In an action by a bank against the defendant to recover on two promissory notes which had been executed by his son, the evidence is *held* to show that the defendant was not interested in the cattle business in which the son was engaged and for the carrying on of which the money borrowed on the notes was used, and that although the defendant did at a later date sign one note with his son, the bank knew he had no interest in the proceeds or in any of the transactions subsequent to the loan, and that he was only a guarantor on the note. p. 282.

2. Where the bank loaned money to the son on a note indorsed by his father, the oral promise of the father, made at the time, to guarantee the payment of two past-due notes of the son, is unenforceable under sub. (2), sec. 2307, Stats. 1923, being without consideration. p. 283.

3. The fact that a person who orally promises to pay the debt of another is merely incidentally benefited is not sufficient to take the case out of the statute, but such advantage must be shown to be the object or consideration of the promise. p. 285.

APPEAL from a judgment of the circuit court for Iowa county: S. E. SMALLEY, Circuit Judge. *Reversed.*

The appeal is by the defendant from a judgment in favor of the plaintiff.

The action was brought to recover on two promissory notes. For many years prior to 1923 one A. T. Graber was engaged as a cattle dealer in Iowa county. In the conduct of his business he would purchase a large number of cattle in the spring of the year, pasture them until the following winter, and would then sell them in the market. Having insufficient financial means with which to pay for the cattle when they were bought, he pursued the practice, together with other cattle dealers in said county, of applying to a bank for a loan covering the period of time intervening between the purchase and the sale. It appears that the financial operations of A. T. Graber prior to 1923 had been rather unsatisfactory, and that his obligations to the plaintiff bank, evidenced by his promissory notes, had to be renewed from time to time.

The defendant *Louis Graber*, the father of A. T. Graber, appears to be one of the substantial citizens of Iowa county, being the owner of about 1,300 acres of valuable pasture lands in said county, and he also having been for a period of upwards of twenty years prior to 1923 one of the directors of the plaintiff bank. As the obligations of A. T. Graber from time to time became due and were renewed, they were discussed at directors' meetings in the presence

of the defendant, and the latter was repeatedly urged to guarantee their payment. This he consistently at all times refused to do, expressing, however, orally, his willingness to stand back of his son's obligations.

In the spring of 1923, at the usual time when cattle-men made applications for loans to the plaintiff bank, A. T. Graber also applied for a loan of $25,000 to enable him to carry on his operations for the coming season, and this application was presented to the board of directors of the bank, at which meeting the defendant was present, and discussed. At this time A. T. Graber was indebted to the bank on two notes, one for the sum of $4,800, dated March 21, 1921, and the other for $5,178.95, dated February 1, 1923. Owing to the failure of A. T. Graber to meet his prior obligations and the repeated renewals of prior notes, and the failure of the defendant to comply with his former oral promises to legally guarantee his son's indebtedness, a decided opposition sprang up at the directors' meeting to the granting of the application of A. T. Graber; and in this behalf the cashier of the bank, one Bishop, who was also a director, testified as follows:

"I reported to the board that Mr. A. T. Graber had asked for a loan of $25,000 for cattle for that year, and one of our board of directors spoke up and said that he should not have any more money; that there were two notes in the bank that his father had promised to guarantee and had not done it when so requested. . . . That was talked over pro and con, and *Mr. Louis Graber* [the defendant] got up and said that they needed money to make money with; that they had a lot of pasture, and they had to have money to get cattle to put on these pastures. And he said to the board: 'If you will loan me $15,000, if you will loan us $15,000, I will assume the payment of Bert's other two notes, and you will never lose a dollar.' He also asked me, as at his request, not to put in the minutes what he said about assuming the payment of Bert's other two notes. He made the statement that if he did not pay these notes while he was alive that he had his

will fixed so that the notes would be good if he died before he had paid them. He told the board that these cattle were going on his pasture and that they would be his cattle. The board then voted to loan him and Bert $15,000 on the condition I have stated."

Other directors of the bank who were present at the meeting corroborated the testimony of the cashier. The directors thereupon voted favorably on the loan for $15,000, and to evidence the same a note for this amount was duly executed by both the defendant and A. T. Graber, and the amount of the loan was placed to the credit of A. T. Graber in his open checking account with the bank, and withdrawn from time to time by A. T. Graber, and used in the payment of cattle purchased by him. The minutes of the directors' meeting, in accordance with the alleged request of the defendant, omitted all statements of the defendant's alleged assumed obligation of the prior notes as testified to by the cashier.

The defendant denied the testimony of the directors above referred to with respect to the alleged assumption of the obligation concerning the prior notes of A. T. Graber. He also denied that he was in any manner interested in A. T. Graber's business; that he had any interest in the cattle; that he received any of the profits from the sale of the cattle purchased out of the proceeds of the $15,000 loan; and he further testified that the cattle were pastured upon lands either belonging to A. T. Graber or held by him under lease, or lands which had been assigned to him for pasturage purposes. A. T. Graber substantially corroborated the testimony of the defendant.

The case was tried with a jury, and in the special verdict the jury found:

1. That at the meeting of the board of directors of the plaintiff bank held on the 4th day of April, 1923, the defendant *Louis Graber,* as a consideration for the loan of $15,000 to be made by the bank to his son A. T. Graber and

himself, agreed that he would assume the notes of $4,800 and $5,178.95 then owing to the plaintiff bank by his said son, A. T. Graber.

2. That the plaintiff relied on said agreement when it made said loan of $15,000.

3. That when the said $15,000 was arranged for on April 4, 1923, the said *Louis Graber* represented to the officers of the bank that it was to be used by him and his said son in a joint enterprise, whereby cattle were to be purchased and pastured on the lands of *Louis Graber*.

4. That the bank relied on said representations when it made said loan of $15,000.

5. That the defendant *Louis Graber* requested the plaintiff bank not to say anything to A. T. Graber about the assumption of the payment of said notes by him, and to continue to treat them as the notes of A. T. Graber until such time as the bank felt it must have the money.

After the usual motions made after verdict, the court ordered judgment in favor of the plaintiff and against the defendant, from which judgment the defendant has prosecuted this appeal.

Further facts will be referred to in the opinion.

For the appellant there were briefs by *Schubring, Ryan, Clarke & Petersen* of Madison and *McGeever & McGeever* of Dodgeville, and oral argument by *William Ryan*.

For the respondent there was a brief by *Kopp & Brunckhorst* of Platteville, and oral argument by *A. W. Kopp*.

The following opinion was filed January 12, 1926:

DOERFLER, J. For many years prior to 1923 A. T. Graber was engaged as a sole trader in the cattle business, and no claim is herein made that the defendant was during such time interested in his business. The defendant was a man of large means, being the owner of 1,300 acres of land, and his financial condition was such, as testified to by the cashier

of the bank, that the bank would loan him $15,000 or $20,000 upon his own unsecured note. A. T. Graber's signature to the $15,000 note was of little value as security, but made manifest the purpose for which the loan was made, namely, to secure for him ample funds to enable him to carry on the season's operations of his business. He therefore became the principal debtor and the defendant the guarantor. The application for the loan was made by A. T. Graber; was in accordance with similar applications previously made by him for his own individual business, and at a time when cattle dealers looked to the bank for financial assistance to carry them over the season during which they prepared cattle for market. This general course of business was fully known to the directors of the bank. The defendant had been a director of the plaintiff bank prior to 1923 for a period of over twenty years, and the business affairs of A. T. Graber and other cattle-men were periodically discussed when applications were made for loans. That the directors and officers of the bank were fully aware of the purpose of this $15,000 loan, and that it was for the benefit of A. T. Graber exclusively, is made manifest by the fact that the total amount was credited to his individual checking account, in which the defendant had no interest and over which he had no control. The amount when so credited was checked out by A. T. Graber from time to time to meet his obligations incurred while purchasing cattle; and from prior experiences of the cashier and other officers of the bank it can readily be assumed that the bank was fully aware and had knowledge of the purpose for which these checks were issued. The undisputed evidence in the case conclusively shows that the defendant was not interested in his son's business; that the cattle purchased belonged to the latter and remained his property until they were sold; that they were pastured upon the lands either owned by A. T. Graber or leased by him, or on lands which had been assigned to him or which he had received permission to use

for pasturage purposes; and that on the sale of the cattle the defendant received no portion of the profits.

It may be admitted that evidence of transactions subsequent to the $15,000 loan would be of little value if it appeared from the evidence that the defendant and his son obtained the loan to further a joint enterprise, and if the bank in fact relied upon representations which it had a right to rely upon with respect to an alleged joint enterprise. But viewing the testimony of the plaintiff's witnesses as a whole, and taking into consideration all the surrounding facts and circumstances, no other conclusion can be arrived at excepting that the bank fully knew that the loan was for the sole benefit of A. T. Graber and that the defendant had no interest in the proceeds of the loan or in the transactions subsequent to the loan. At any rate, any interest which the defendant might have had in procuring this loan, or any benefit which might have accrued to him, amounted to a mere incidental interest or benefit, and therefore was not the main object and purpose for which this loan was procured.

But assuming that the defendant did have an interest in this loan, what consideration did the bank part with, and what advantage accrued to the defendant in the transaction? There is no evidence in the case that the bank would have denied this loan to either the defendant individually or to A. T. Graber and the defendant. The defendant's individual note, unsecured, would have represented ample security to the bank, on account of his large financial ability. The responsibility of the defendant would have also amply secured a joint note. The alleged oral promise, therefore, of the defendant to assume the individual indebtedness of A. T. Graber, clearly amounted to an undertaking to pay the debt of a third party without consideration; and such obligation, not being in writing and expressing a consideration and not being signed by the person charged, plainly brings it within the purview of the statute of frauds above referred to.

The verdict of the jury was solely based upon the testimony of the directors of the plaintiff bank, from which it concluded that the defendant and his son were engaged in a joint enterprise; also from a statement alleged to have been made by the defendant to the directors that the cattle would be pastured upon his land and that they would be his cattle, and that they, the defendant and son, needed money with which to make money. These statements are not controlling, and, in view of all the evidence in the case and the surrounding facts and circumstances, have but little or no probative value.

In *McCord v. Edward Hines L. Co.* 124 Wis. 509, 511, 512, 102 N. W. 334, the opinion, rendered by Mr. Justice DODGE, referring to sub. 2 of sec. 2307, Stats. 1898, being the statute involved herein, uses the following forcible and significant language:

"This provision comes to us from the original statute of frauds, 29 Car. II, of which it has been said by an enthusiast that every line was worth a subsidy, and by a cynic that every line has cost a subsidy to interpret. The latter statement has been gaining force as the ingenuity of greed has, through centuries, been strained to escape this apparently plain provision, until its application is now surrounded by such a cloud of decisions as to defy exhaustive examination."

The statute of frauds was enacted to prevent perjury, and long before its enactment it had become apparent that ingenious devices and schemes had been resorted to by creditors to shift an indebtedness of an insolvent or impecunious debtor upon third persons not in any way involved or interested in the original debt. The original statute is couched in plain and unambiguous language. That it was a wise provision is made manifest by its retention for centuries in England and its enactment in the various states of the Union. The difficulties encountered in its enforcement do not arise from the language used, but from an application

of the statute to the infinite complicated situations of facts
in cases which require a determination of whether a given
case lies within or without the purview of this enactment.
A casual examination of the text-books, the reference books,
and the authorities will reveal a conflict of views which are
utterly irreconcilable, and yet these divergent views are sup-
ported by apparently sound logic and have been entertained
by learned and able jurists and text-writers. Quotations
of general principles contained in these decisions are of little
value unless the facts are closely scrutinized and analyzed.
An examination of the cases in Wisconsin discloses that this
court has adopted the rule which is tersely embodied in the
syllabus in the case of *Clapp v. Webb,* 52 Wis. 638, 9 N. W.
796, which reads as follows:

"The mere fact that an advantage may incidentally result
to the promisor from his oral promise to pay the debt of
another is not sufficient to take it out of the statute of
frauds, but there must be other evidence that such advantage
was the object or consideration of the promise."

See, also, *Emerick v. Sanders,* 1 Wis. 77; *Shook v. Van-
mater,* 22 Wis. 532; *Vogel v. Melms,* 31 Wis. 306; *Young
v. French,* 35 Wis. 111; *Hoile v. Bailey,* 58 Wis. 434, 17
N. W. 322; *Rietzloff v. Glover,* 91 Wis. 65, 64 N. W. 298;
*Commercial Nat. Bank v. Smith,* 107 Wis. 574, 83 N. W.
766.

As above stated, any advantage or benefit in the instant
case accruing to the defendant was a mere incidental one,
and not sufficient to take the case out from under the statute.
It would also seem that, if it be deemed that the statute is
not operative under the peculiar facts and circumstances of
this case, it would become almost completely emasculated,
and in the future would fail of the original purpose for
which it was enacted.

Our conclusion herein is not based upon any view enter-
tained that the testimony of the plaintiff's witnesses is false

or perjured, but upon a construction of that testimony in view of all the surrounding facts and circumstances of the case.

*By the Court.*—The judgment is reversed, and the cause is remanded with directions to dismiss the complaint.

A motion for a rehearing was denied, with $25 costs, on March 9, 1926.