MANN, Appellant, v. ERIE MANUFACTURING COMPANY, Respondent.

*March 4—April 2, 1963.*

For the appellant there was a brief by *Charlton, Yanisch, Binzak & Ritchay* of Milwaukee, and oral argument by *Earl A. Charlton.*

For the respondent there was a brief by *Michael, Best & Friedrich,* and oral argument by *Kenneth K. Luce,* all of Milwaukee.

HALLOWS, J. The main question for decision is whether the oral promise of Erie is an unconditional and primary promise and thus outside of the statute of frauds (sec. 241.02 (2), Stats.), or is a special promise to answer for the debt, default, or miscarriage of another person which is void by that section because it is not in writing and subscribed by Erie.

From the number of cases in this and other jurisdictions which have interpreted the statute of frauds with varying and conflicting results, one thing is clear, this court even in 1905 made no understatement in *McCord v. Edward Hines Lumber Co.* (1905), 124 Wis. 509, 512, 102 N. W. 334, when it stated, referring to the statute of frauds:

". . . it has been said by an enthusiast that every line was worth a subsidy, and by a cynic that every line has cost a subsidy to interpret."

That case discussed the nature of an unconditional and primary promise, not within the scope of the statute, and of a collateral promise within its ambit. To answer for the debt of another means not the assumption of the debt, or its extinguishment and substitution of the new promise, but a promise collateral and dependent upon the obligation to pay of another person and to pay the debt upon breach of such primary promise. The mere form of the promise, whether unconditional or collateral, is not necessarily determinative of the nature of its substance. The question is one of fact.

Counsel for Mann argues Erie's promise to pay the commissions under the agreement with Emergox was unconditional and therefore a primary promise of Erie, relying on the use of the word "guarantee." The word "guarantee" in itself is somewhat ambiguous. In its primary and ordinary sense, it means to become responsible for the fulfilment of an agreement of another, to secure, to answer for the debt, default, or miscarriage of another, or "To be a guarantee, warranty, or surety for; esp., to undertake to answer for the debt, default, or miscarriage of (another); to become responsible for the fulfilment of (the agreement of another)." Webster's New International Dictionary (2d ed., unabridged). It may and often is used in reference to an original undertaking and as a synonym for an absolute and unconditional promise. *Drovers' Deposit Nat. Bank v. Tichenor* (1914), 156 Wis. 251, 145 N. W. 777. Mann testified Alfrey said he would guarantee the commissions; Alfrey testified he would guarantee the payment of the commissions if Emergox failed to pay them. Mr. Fischer understood Erie had guaranteed earned commissions which Emergox did not pay. Mann apparently understood the word as a collateral promise to the

agreement of Emergox to pay the commissions. Mann first tried to collect from his employer Emergox before trying to collect from the defendant. The evidence and the surrounding circumstances do not indicate Erie promised to pay whatever commissions Mann might earn under the contract if he would work for Emergox. It is true Mann relied upon the oral guaranty of Erie and would not have entered into an agreement with Emergox unless the promise was made, but such fact does not necessarily determine the debt of Emergox became Erie's.

The main contention of Mann is Erie received a substantial benefit for its promise to pay the commissions and under the beneficial-consideration doctrine, Erie's oral promise became a primary one in fact even though it might have been in form one to answer for the debt of another. This argument is based upon the relationship between Erie and Emergox and the fact Erie received a benefit from the increase in sales of its exclusive distributor Emergox which Erie considered to be understaffed. The beneficial-consideration theory has received support in the cases and is articulated and explained in many, and sometimes conflicting, ways. See 3 Williston, Contracts (3d ed.), p. 427 *et seq.*, secs. 472, 473; 49 Am. Jur., Statute of Frauds, pp. 424–430, secs. 73–75. However, the consideration upon which the promise is founded must be something more than what is required in a contract sense, otherwise no promise would fall within the statute. Under this doctrine, although the promise is in form to answer for the debt of another and may incidentally have the effect of extinguishing that debt or liability, nevertheless if the main purpose and object in making the promise is not to answer for another but directly to serve or promote the interests of the promisor, it falls outside the statute. A common formulation of the doctrine is in terms of the promisor's leading object or main purpose to benefit himself, Restatement, 1 Contracts, p. 244, sec. 184; 3 Williston, Contracts, Id.,

p. 421, sec. 470 *et seq.*, or in terms of a new consideration for the oral promise as moving from the promisee directly to the promisor and in fact or apparently desired by the promisor mainly for his own pecuniary or business advantage rather than to benefit another person.

This theory is not without some support in the older Wisconsin cases. 2 Marquette Law Review (1917–1918), 144; Carey, Guaranties and the Statute of Frauds, 2 Wisconsin Law Review (1923), 193. In *Dyer v. Gibson* (1863), 16 Wis. 580 (*557), the court referred to the leading and primary object of the promisor's oral promise and the beneficial nature of the consideration accruing to him. In *Clapp v. Webb* (1881), 52 Wis. 638, 9 N. W. 796, the court thought the resulting advantage to the promisor must be the object of his promise and the consideration upon which it was made. Language in a similar vein is found in *Commercial Nat. Bank v. Smith* (1900), 107 Wis. 574, 83 N. W. 766, and *Weisel v. Spence* (1884), 59 Wis. 301, 18 N. W. 165. These cases are representative of others striving to formulate a general rule of easy application.

However, in the *McCord Case* this court examined the beneficial-consideration doctrine and rejected it as such. It was pointed out most statements of the doctrine and its application to particular facts were misleading. Such factors as the leading or main object of the promisor to benefit himself and the reliance of the promisee principally upon the oral promise, or a new consideration moving directly to the promisor *per se* would not prevent the application of the statute if the oral promise was in fact to answer for the debt of another. Such considerations are evidence in a particular case with other factors to determine in fact the promise was a primary obligation assumed by the promisor even though the promise coexisted with or its performance was to be measured by and in terms of the debt of another. To use such evidence as a mechanical formula to take an oral promise

out of the statute of frauds because no fraud or no evidentiary problem of proving the oral promise exists is not justified.

It is true, since *McCord* this court has given lip service to the beneficial-consideration theory. *W. C. Zachow Co. v. Grignon* (1920), 172 Wis. 449, 179 N. W. 593; *Day v. Morgan* (1924), 184 Wis. 595, 200 N. W. 382 (noted in 3 Wisconsin Law Review (1924–1926), 178). We do not consider these cases as overruling the *McCord Case* and establishing the beneficial doctrine as an arbitrary rule. In *Iowa County Bank v. Graber* (1926), 189 Wis. 277, 206 N. W. 835, it is stated (p. 285):

"Quotations of general principles contained in . . . decisions are of little value unless the facts are closely . . . analyzed."

The court found the oral promise to be within the statute of frauds. In evaluating the facts the court considered the advantage to the promisor was incidental and quoted from *Clapp v. Webb, supra.* In this respect the case is much like *Commercial Nat. Bank v. Smith, supra,* which held a guaranty of payment of a note within the statute and also quoted the *Clapp Case.* Any language or implication in these cases that the beneficial-consideration doctrine was approved is overruled.

We consider *McCord* expressed the correct view in this jurisdiction, namely, a determination from all the evidence must be made of the nature of the oral promise as a fact free from the mechanical application of generalized rules of assumed intention. The form of the promise, the nature of the consideration, the language of the promise used in light of the circumstances, the motive and object of making the promise, are all considerations in determining the nature of the promise but do not automatically determine it. If upon such consideration the promise is in fact one to answer for the debt and default of another, it comes within the scope of the statute of frauds, otherwise it does not.

After reviewing the evidence in this case, we conclude the trial court was not in error in finding there was no evidence to sustain the verdict. The benefit received by Erie, although sufficient to sustain the requirement of the consideration in a contract sense, does not evidence any intention on its part to be equally or jointly responsible with Emergox for the commissions or to make an independent, unconditional promise to pay the commissions. The evidence points only to an oral promise made by Erie upon sufficient consideration to induce Erie to orally agree to pay the commissions earned by the plaintiff under the contract if Emergox failed to pay them. Reliance upon such promise by the promisee does not make the promise primary and unconditional. The oral promise is within the statute of frauds and void.

Finally, Mann argues Erie is estopped from relying on the statute of frauds. Such defense was pleaded; the offer of judgment is not an admission. Testimony on behalf of Erie in answer to leading questions of what the issues in the case were does not amount to an estoppel. The trial court ordered judgment for the $6.48 apparently on the offer of judgment or conceded by the defendant, and allowed $100 costs to the defendant. No error is assigned on that account.

*By the Court.*—Judgment affirmed.

DIETERICH and WILKIE, JJ., took no part.