KLEIN-DICKERT OSHKOSH, INC., Plaintiff-Respondent, v. FRONTIER MORTGAGE CORPORATION, Defendant-Appellant and Third-Party Plaintiff: PIONEER TITLE INSURANCE COMPANY, and others, Third-Party Defendants.

Supreme Court

*No. 77–083. Submitted on briefs January 9, 1980.—Decided February 7, 1980.*
(Also reported in 287 N.W.2d 742.)

For the appellant the cause was submitted on the brief of *Pinkert, Smith, Koehn & Weir* of Sturgeon Bay.

For the respondents the cause was submitted on the brief of *John P. Koberstein* and *Voss, Nesson, Koberstein, Erbach & Voss* of Madison.

CONNOR T. HANSEN, J.   This litigation arises out of the construction of the Midway Motor Lodge in Janesville, Wisconsin. IDT, Inc., was the owner of the project and T. W. Campbell Construction Company, Inc., was the general contractor. T. W. Campbell was the president of both IDT and Campbell Construction. Although Frontier Mortgage was financing the project, Pioneer Title Insurance Company was the disbursing agent for Campbell Construction.

Klein-Dickert Oshkosh entered into a contract with Campbell Construction for the construction of a dome over an enclosed swimming pool at the motor lodge. This enclosed swimming pool was an important part of the motel construction project and Klein-Dickert was the only company in the area which constructed such domes. Klein-Dickert completed its contract, and upon default of payment by Campbell Construction, commenced the instant action against Frontier Mortgage. Klein-Dickert claimed damages for performance of its contract in the amount of $43,180, and as a result of a guaranty by Frontier Mortgage Corporation, demanded payment by Frontier.

Various cross-complaints were served and filed between Frontier Mortgage, Campbell Construction, IDT and Pioneer Title. On motion of the parties, the trial court

granted a severance and tried separately the issues between Klein-Dickert Oshkosh and Frontier Mortgage.

In our opinion the issue which disposes of this appeal is whether the findings of the trial court that Frontier Mortgage guaranteed payment to Klein-Dickert are against the great weight and clear preponderance of the evidence.

We believe it is well-established that findings of the trial court will not be upset on appeal unless they are clearly erroneous and against the great weight and clear preponderance of the evidence. The evidence supporting the findings of the trial court need not constitute the great weight or clear preponderance of the evidence and reversal is not dictated if there is evidence to support a contrary finding. If there is to be a reversal on appeal, the evidence to support such a result must itself constitute the great weight and clear preponderance of the evidence. Furthermore, when the trial judge acts as the finder of fact, he is the ultimate and final arbiter of the credibility of witnesses. When more than one inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact. *Bank of Sun Prairie v. Opstein,* 86 Wis.2d 669, 676, 273 N.W.2d 279 (1979), and cases cited therein.

Thus, in the case before us we review the record for credible evidence which will support the findings of the trial court.

In the fall of 1974, Donald H. Paske, president and general manager of Klein-Dickert Oshkosh, and Campbell Construction Company entered into negotiations for the installation of a plexiglass dome for the structure which would enclose the swimming pool at the motor lodge. While negotiations were being carried on, Paske checked the credit standing of Campbell Construction. The information he received led him to conclude that Campbell Construction was in a weak position financially and

caused him to have reservations about the financial ability of Campbell Construction to complete the project.

On March 7, 1975, Klein-Dickert sent Campbell Construction a proposal under the terms of which Klein-Dickert proposed to furnish and install plexiglass domes for the Midway Motor Lodge for the sum of $43,500. This proposal stated, "This quotation is based upon your furnishing us with an irrevocable letter of Guarantee from your Lending Institution." This proposal was accepted by T. W. Campbell, president and owner of Campbell Construction (also president of IDT), on March 17, 1975.

On March 20, 1975, Paske received a letter from Campbell Construction dated March 17, 1975, which stated that Campbell Construction was awarding the contract to Klein-Dickert, and that payment would be handled by Pioneer Title Insurance Company. The contract, which was attached, stated that the agreement was between Klein-Dickert and IDT, as the owner, and Campbell Construction, as general contractor. The proposal of Klein-Dickert dated March 7, 1975, was made part of the contract. On March 20, 1975, Paske also received another letter from Campbell Construction dated March 17, 1975, which stated that the contract was awarded to Klein-Dickert. The letter stated in part:

". . . A copy of the proposal has been forwarded to our bank in Green Bay per the attention of:

Mr. Carl Manns
Frontier Mortgage Corporation
2001 South Webster Avenue
Green Bay, WI 54301

"Mr. Manns will be issuing you a letter of guarantee in regard to payment. Payment would be as follows:

"1. Payment to be per our terms of the loan institution.

"2. 90% to be paid upon delivery in the draw request after delivery.

"3. The balance of 10% to be paid upon completion of erection in the following draw request.

"4. Draw requests are submitted on the second or third of each month with payment by the bank approximately by the fifteenth or twentieth of that month."

The letter of guaranty from Frontier Mortgage was not forthcoming and there were a number of contacts between Paske of Klein-Dickert, Campbell, and Manns of Frontier Mortgage. Paske, Campbell and Manns testified at trial. The testimony of Paske reflects that Klein-Dickert at all times insisted upon a guaranty from Frontier Mortgage and that Klein-Dickert would not proceed on the contract without such a guaranty. Campbell's testimony reflects that he knew Klein-Dickert insisted upon the guaranty and expected Frontier Mortgage to guarantee payment of the contract. The testimony of Manns reflects that he knew Klein-Dickert insisted upon the guaranty and would not proceed without it; however, he testified that he repeatedly told Paske that Frontier Mortgage could not guarantee payment.

Finally, on April 11, 1975, Manns sent Klein-Dickert the following letter:

"Dear Mr. Paske:

"In response to your phone call and a conversation with Ted Campbell, we will be making payment under our construction loan agreement as outlined in Theodore W. Campbell's letter of March 17, 1975 to you. That is specifically that payment will be as follows:

"1. Payment will be under the terms of the construction loan agreement.

"2. 90% of the material price will be paid upon delivery and the draw request after delivery and inspection of the 108 acetate domes and flat end wall panels.

"3. The balance of 10% plus labor will be paid upon completion and erection.

"4. The monies will be paid between the 15th and 20th of the month in which they are requested, after the inspection is made.

"5. The monies will be advanced to Pioneer Title Company who will require that lien waivers are furnished in proper form and with proper endorsements.

"We sincerely hope that this plan meets with your approval and invite you to call if you have any further questions."

Upon receipt of the foregoing letter, Paske called Manns to make certain that sufficient funds were available for payment of the Klein-Dickert contract and that funds were specifically earmarked for Klein-Dickert. Manns told Paske that $46,000 was allocated to the pool enclosure under the "cost breakdown" for the project, and that Klein-Dickert would receive that amount if Campbell approved the work.

Manns testified that when he told Paske there was $46,000 available for the pool enclosure, approximately $20,000 had been withdrawn from the pool enclosure account. He had read the amount of $46,000 off of the cost breakdown sheet, but he did not check to see whether any money had been drawn on the pool enclosure account. He testified that if he would have checked the withdrawal documents, he would have known that at the time he talked to Paske $20,000 had been paid out from the pool enclosure account. Paske testified that if he would have known that $20,800 had been paid out, Klein-Dickert would not have proceeded with the construction contract.

Klein-Dickert completed its performance of the contract, but the construction project collapsed and Klein-Dickert was never paid. In June, 1975, Frontier disbursed $20,000 to Pioneer, the disbursing agent, but Pioneer paid the funds to Campbell Construction, instead of to Klein-Dickert. In July, Klein-Dickert received a check in the amount of $20,000 from Campbell Construction, but the check was returned because of insufficient funds.

A review of the testimony of Paske reflects that Klein-Dickert would not proceed on the contract without a guaranty from Frontier Mortgage and assurances from

Frontier Mortgage that funds were available to pay the contract. The record also reflects that Manns knew Klein-Dickert insisted upon a guaranty from Frontier Mortgage and would not proceed with construction without such a guaranty, and that Manns mistakenly told Klein-Dickert $46,000 was available to pay their contract when in fact $20,000 had already been disbursed. Further, it was the testimony of Manns that he repeatedly told Paske of Klein-Dickert that Frontier could not guarantee payment of their contract with Campbell Construction.

At the conclusion of the trial the trial court made the following findings of fact and conclusions of law:

*"Findings of Fact*

"1. That on March 17, 1975, plaintiff, Klein-Dickert Oshkosh, Inc., and third party defendant, T. W. Campbell Construction Company, Inc., entered into a written contract for the construction and glazing of the swimming pool dome at the Midway Motor Lodge in Janesville, Wisconsin, for the sum of Forty-Three Thousand One Hundred Eighty and no/100 Dollars ($43,180.00).

"2. That said construction contract required an irrevocable guarantee from Campbell's lending institution, Frontier Mortgage Corporation.

"3. That between March 17, 1975, and May 1, 1975, defendant, Frontier Mortgage Corporation, guaranteed the payment of the contract between the plaintiff and the third party defendant, T. W. Campbell Construction Company, Inc.

"4. That shortly after April 11, 1975, defendant, Frontier Mortgage Corporation by its president, Carl Manns, represented to the plaintiff that Frontier Mortgage Corporation had available the amount of Forty-Six Thousand Dollars ($46,000.00) for the performance of plaintiff's portion of said contract.

"5. That plaintiff relied upon the representation that Forty-Six Thousand Dollars ($46,000.00) was available for the performance of the contract.

"6. That plaintiff performed the work in accordance with the contract on or before May 25, 1975.

"7. That plaintiff has received no money for the performance of its contract."

*"Conclusions of Law*

"1. That the defendant, Frontier Mortgage Corporation, guaranteed the contract between the plaintiff, Klein-Dickert Oshkosh, Inc., and the third party defendant, T. W. Campbell Construction Company, Inc., in the amount of Forty-Three Thousand One Hundred Eighty and no/100 Dollars ($43,180.00).

"2. That the defendant, Frontier Mortgage Corporation negligently misrepresented the fact that Forty-Six Thousand Dollars ($46,000) was available for the payment of the performance of plaintiff's contract with the third party defendant, T. W. Campbell Construction Company, Inc."

Judgment was entered in favor of Klein-Dickert against Frontier in the amount of $43,180, plus interest, together with the costs and disbursements of the action, for a total of $47,828.46.

A guaranty is collateral to, and made independently of, the principal contract which it guarantees, and the guarantor's liability is secondary rather than primary or original. *Continental Bank & Trust Co. v. Akwa,* 58 Wis.2d 376, 388, 206 N.W.2d 174 (1973).[1] The intent of the parties in a case such as this must necessarily be derived from a consideration of their words, written and oral, and their actions in view of the circumstances. In *Mann v. Erie Mfg. Co.,* 19 Wis.2d 455, 459, 120 N.W.2d 711 (1963), this court defined the word "guarantee" as "to become responsible for the fulfillment of an agreement of another, to secure, to answer for the debt, default, or miscarriage of another." *Mann* also stated that the form of the promise was not necessarily determinative of the nature of its substance. "The question is one of fact."

[1] *First Wisconsin Nat. Bank v. Oby,* 52 Wis.2d 1, 11, 188 N.W. 2d 454 (1971); *Associates Financial Services v. Eisenberg,* 51 Wis.2d 85, 90, 186 N.W.2d 272 (1971); *Tidioute Savings Bank v. Libbey,* 101 Wis. 193, 77 N.W. 182 (1898).

*Mann v. Erie Mfg. Co., supra,* at 459. No specific language is needed to create a contract of guaranty and the word "guaranty" need not appear in the writing to have the contract construed as one of guaranty. The collateral obligation of the guarantor may be evidenced by a variety of expressions.[2]

The decision of the trial court states:

"Clearly the letter of April 11th, 1975 and the representation of Mr. Manns of Frontier Mortgage to Klein-Dickert when considered with all the surrounding circumstances constituted a guaranty on the part of Frontier Mortgage to pay the contract price if Campbell Construction failed to do so."

The trial court also made the following finding of fact:

"3. That between March 17, 1975, and May 1, 1975, defendant, Frontier Mortgage Corporation, guaranteed the payment of the contract between the plaintiff and the third party defendant, T. W. Campbell Construction Company, Inc."

The ultimate question then becomes whether there is credible evidence and reasonable inference which could be drawn therefrom to support this finding. We are of the opinion there is and it cannot be said that the findings of the trial court are against the great weight and clear preponderance of the evidence.

Frontier Mortgage was committed to the financing of the construction of a motel. The completion of the enclosed swimming pool was an important part of the project. All parties knew that Klein-Dickert would not proceed with the construction of the swimming pool enclosure unless Frontier Mortgage guaranteed payment of its contract. On March 17, 1975, Campbell wrote Klein-Dickert stating that Frontier Mortgage would guarantee the payment of the contract. On April 11, 1975, Fron-

---

[2] 38 Am. Jur. 2d, *Guaranty,* pp. 1001, 1002, secs. 5, 6.

tier Mortgage acknowledged receipt of a copy of the March 17, 1975, letter from Campbell to Klein-Dickert and proceeded to advise them as to how payment would be made. Later Frontier Mortgage advised Klein-Dickert that $46,000 was available to pay their contract. This was a misstatement by Frontier because $20,000 had already been paid out. Klein-Dickert would not have proceeded with their contract if they had known that only about $26,000 remained in the swimming pool enclosure account.

Klein-Dickert completed their contract and Frontier Mortgage remitted $20,000 to Pioneer Title. Pioneer Title apparently remitted the $20,000 to Campbell Construction. Campbell Construction sent a $20,000 check to Klein-Dickert and it was returned because of insufficient funds. The motel project collapsed and Klein-Dickert was never paid for the performance of its contract.

Based upon the writings of the parties and in light of all the circumstances, we conclude the judgment should be affirmed.

At the conclusion of the trial, the trial court, pursuant to the provisions of sec. 802.09(2), Stats. (formerly sec. 269.44), granted the motion of Klein-Dickert to amend its complaint to allege a cause of action for "negligent misrepresentation." The amendment was granted because of the mistaken representation by Frontier Mortgage as to the amount of money actually in the swimming pool enclosure account. On appeal, Frontier Mortgage argues that the granting of the motion to amend constituted reversible error. In view of the fact that we affirm that part of the judgment awarding damages on the basis of the guaranty, it becomes unnecessary to consider this issue.

*By the Court.*—Judgment affirmed.