BRENNAN, STEIL, BASTING & MACDOUGALL, S.C., Plaintiff-Respondent,

v.

Susan K. COLBY, a/k/a Susan K. Kettler, f/k/a Susan K. Nelson, Defendant,

Donald F. COLBY, Defendant-Appellant.

Court of Appeals

*No. 93–1880. Submitted on briefs September 14, 1994.—Decided November 17, 1994.*

(Also reported in 525 N.W.2d 273.)

For the defendant-appellant the cause was submitted on the briefs of *Kristen E. Falk* of *Hart & Falk* of Edgerton.

For the plaintiff-respondent the cause was submitted on the brief of *Michael E. Grubb* and *Barbara W. McCrory* of *Brennan, Steil, Basting & MacDougall, S.C.* of Janesville.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.   Donald F. Colby appeals from a judgment in favor of Brennan, Steil, Basting & MacDougall, S.C., a Janesville law firm, sustaining the firm's claim against Colby for fees of $2501.38[1] for legal services provided to Colby's then-fiancée, Susan Kettler, in a mortgage-foreclosure action.

The dispositive issue is whether Colby agreed to pay the firm's fees for its representation of Kettler in the action and, if so, whether that agreement is unenforceable because it was not in writing, as required by the statute of frauds, § 241.02(1)(b), STATS. Insofar as it is pertinent here, the statute states that "[e]very special promise to answer for the debt . . . of another person" is void "unless such agreement or some note or memorandum thereof, expressing the consideration, [is] in writing and subscribed by the party charged therewith."

We conclude that the trial court correctly determined that an agreement existed between Colby and the firm whereby Colby would pay for legal services to be provided to Kettler in the foreclosure action, and

---

[1] The trial court also assessed costs of $368.40, for a total judgment of $2869.78.

345

that § 241.02, STATS., does not require the agreement to be in writing in order to be enforceable. We therefore affirm the judgment.

The underlying facts are not in serious dispute. Colby contacted Michael Grubb, a member of the Brennan firm, telling him that Kettler, his fiancée, was a defendant in a mortgage-foreclosure action instituted by a bank and needed legal representation. After checking the personal financial reference that Colby provided assuring his ability to pay the firm's fees, Grubb informed Colby by telephone that he would defend Kettler in the action at the rate of $80 per hour (plus expenses) with an initial $1000 retainer. Colby sent Grubb a check for $1000, along with a letter outlining the facts of the case and requesting copies of all correspondence sent to Kettler.

Grubb undertook to represent Kettler in the action, filing an answer, participating in several depositions and performing other legal services for her. During the course of the action, Grubb communicated with and received directions from Colby.[2] Eventually, with Colby's authorization, Grubb accepted the bank's settlement offer and assisted Colby and Kettler in attempting to obtain financing to pay the settlement. The attempts proved unsuccessful, however, and Colby did not return Grubb's subsequent telephone calls. When Grubb sent him a bill for his services and

---

[2] The firm's billings indicate more than twenty telephone conversations between Grubb and Colby during this period. In contrast, Grubb communicated directly with Kettler only twice, both times in connection with preparations for her deposition in the case.

expenses, Colby paid only $280.18 for a court reporter charge, leaving a balance of $2501.38.[3]

The firm sued Colby for the balance due,[4] alleging that he had contracted for legal services to be rendered to Kettler in connection with the foreclosure action and that, in reliance on the agreement, the services had been provided but never paid for. The case was tried to the court, and at its conclusion Colby argued for dismissal on grounds that the evidence showed his participation in the matter was, at best, a purported agreement to answer for Kettler's obligations, which was rendered void by § 241.02(1)(b), STATS. The court asked for briefs and eventually ruled in the firm's favor.

The trial court's findings of fact are generally as we have recited them above. In its conclusions of law the court determined, among other things, that Colby and the firm had an "implied contract" under which the firm was to perform legal services for Kettler at Colby's direction, and that Colby breached the agreement by failing to pay for the services. The court also concluded that the statute of frauds did not bar the action because "Colby directly retained [the firm] to perform legal services and did not merely guarantee [Kettler's] obligation . . . ."

Citing *Cook & Franke, S.C. v. Meilman*, 136 Wis. 2d 434, 402 N.W.2d 361 (Ct. App. 1987), Colby argues that his agreement was not his own obligation but merely a promise to answer for Kettler's debt to the firm, and thus was required to be in writing under § 241.02(1)(b), STATS. We disagree.

---

[3] Grubb testified that he talked to Colby several times about payment of the bill and was told: "We'll pay you."

[4] Kettler was also a defendant in the action, but she never answered the complaint and did not participate in the trial.

In *Cook & Franke*, we applied the statute of frauds to an oral promise made by the defendant, Meilman, to pay the plaintiff law firm "for its successful representation" of a friend of Meilman's in a criminal case several years earlier. *Cook & Franke*, 136 Wis. 2d at 436, 402 N.W.2d at 362. Because the jury found "that Meilman promised to pay [the friend's] legal fees," and that fact was not disputed on appeal, and because it was also undisputed that no written contract existed, we concluded that the statute applied and that the parties' purported oral contract was unenforceable under § 241.02, STATS. *Id*. at 437, 402 N.W.2d at 362.

In so ruling, we rejected the argument that the "exception" to the statute of frauds applicable to "unconditional [and] independent" oral promises to pay another's debt applied to Meilman's promise. *Cook & Franke*, 136 Wis. 2d at 437, 402 N.W.2d at 363. The exception has its origins in an earlier case, *Mann v. Erie Mfg. Co.*, 19 Wis. 2d 455, 120 N.W.2d 711 (1963), where the supreme court distinguished between a "collateral" promise to pay another's debt upon the other's breach of his or her primary promise (which it said was the type of promise to assume the debt of another that would come under the statute of frauds) and the promisor's own "primary" promise to assume the debt himself or herself (which would not come within the statute). *Id*. at 459, 120 N.W.2d at 713-14. The difference between the two is the difference between a "guarantee" of another's debt—in the *Mann* court's words, "[t]o answer for the debt of another" (which is subject to the statute)—and an "unconditional" promise to pay the obligation (which is not). *Id*.

Given the jury's unchallenged finding in *Cook & Franke* that Meilman had agreed to pay for legal services provided to his friend, we see only two reasonable

bases for the conclusion reached in that case: either (1) Meilman's promise was made after the fact—after the services had been contracted for by the friend, or after they had been rendered; or (2) the promise was, by its terms, no more than a guarantee or collateral promise to pay the friend's primary obligation to the law firm. The *Cook & Franke* opinion is silent on both points, however: it neither states at what point in the process Meilman's promise was made nor offers any discussion of the terms of the promise or the circumstances under which it was made.

Assuming, then, that the promise in *Cook & Franke* was, either by its own terms or by its after-the-fact timing, plainly the type of collateral promise or guarantee held by *Mann* to come within the statute of frauds,[5] we consider the case to be distinguishable and that it does not compel the result Colby seeks in this case, where the promise to pay was both unconditional and ancillary to the agreement retaining the law firm.

In *Mann*, the supreme court stated that whether a promise to pay the debt of another is primary on the part of the promisor or merely collateral to that of the debtor is a "question . . . of fact." *Mann*, 19 Wis. 2d at 459, 120 N.W.2d at 714. We are bound to affirm factual findings of the trial court unless they are clearly erroneous. Section 805.17(2), STATS.

---

[5] Indeed, we said in *Cook & Franke* that there was no evidence that Meilman, in promising to pay his friend's attorney fees, had " 'any intention . . . to be equally or jointly responsible with [the debtor] . . . or to make an independent, unconditional promise to pay . . . .' " *Cook & Franke, S.C. v. Meilman*, 136 Wis. 2d 434, 437, 402 N.W.2d 361, 363 (Ct. App. 1987) (quoting *Mann v. Erie Mfg. Co.*, 19 Wis. 2d 455, 463, 120 N.W.2d 711, 716 (1963) (alteration in original)).

The trial court found that Colby had contacted Grubb to arrange for Kettler's representation in the foreclosure action, provided a personal reference concerning *his* ability to pay the fees, paid the retainer with his personal check,[6] advised Grubb about the facts of the case, received copies of all case correspondence, and not only kept in continual contact with Grubb during the case but actually "direct[ed]" his activities and eventually "authorized and directed" Grubb to accept the bank's settlement offer. Then, in compliance with the requirement of the settlement agreement that Kettler remain current in interest payments until the principal debt was fully retired, Colby sent the interest checks to Grubb each month for transmission to the bank.[7]

Colby has not established that any of the found facts are clearly erroneous, and we are satisfied that the trial court properly determined that he had contracted with the Brennan firm for the provision of, and payment for, legal services to Kettler in the foreclosure action, and that, in so doing, he was not assuming or guaranteeing Kettler's own primary obligation but was himself the "primary" obligor on the promise and had in fact "directly retained" the firm to provide the services. As a result, § 241.02, STATS., does not defeat the agreement.

---

[6] The check stated on the "memo" line that it was a "deposit on Susan [Kettler]."

[7] As we have also noted, Grubb testified that Colby had frequently acknowledged his responsibility for the charges and actually paid a portion of the final bill. And while Colby's own testimony on this point (and certain others) was to the contrary, the trial court was free to resolve testimonial conflicts by accepting the version it found most credible and persuasive on a given point.

*By the Court.*—Judgment affirmed.