In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 24-1573

TARA OSBORN,

*Plaintiff-Appellant,*

*v.*

JAB MANAGEMENT SERVICES, INC., doing business as ADVANCED CORRECTIONAL HEALTHCARE, INC.,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:22-cv-01049-MMM-JEH — **Michael M. Mihm**, *Judge*.

———————————

ARGUED OCTOBER 28, 2024 — DECIDED JANUARY 22, 2025

———————————

Before ROVNER, BRENNAN, and KOLAR, *Circuit Judges*.

BRENNAN, *Circuit Judge*. JAB Management Services, Inc., an organization that hires employees to provide prison healthcare, terminated Tara Osborn, a technical support specialist and longtime employee. She then sued her former employer, asserting violations of state and federal employment law. Relevant to this appeal, Osborn alleged that JAB Management failed to compensate her for working overtime as

required by the Fair Labor Standards Act. The employer moved for summary judgment on Osborn's claim, which the district court granted. We affirm.

**I**

**A**

Before turning to the facts of this case, we begin with a word on procedure. Osborn filed her claim in the Central District of Illinois. That court's local rules include various requirements that govern how parties file and respond to motions for summary judgment. CDIL–L.R. 7.1(D). For example, a party opposing summary judgment must "list by number each fact from" the movant's summary judgment motion that is undisputed and material, disputed and material, disputed and immaterial, and undisputed and immaterial. *Id.* at 7.1(D)(2)(b)(1)–(4). When the nonmovant disputes a fact, it must support its response with "evidentiary documentation." *Id.* at 7.1(D)(2)(b)(2)–(3). These requirements coincide with Federal Rule of Civil Procedure 56(c), which, among other things, requires a party opposing summary judgment to address the moving party's assertion of facts.

Rule 56 provides district courts with the authority to take appropriate measures when a party "fails to properly address another party's assertion of fact," including giving the noncompliant party another "opportunity to properly … address the fact" or "consider[ing] the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(1)–(2). Consistent with the Federal Rules, in the Central District of Illinois, a nonmovant's "failure to respond to any numbered fact" in the movant's motion for summary judgment is "deemed an admission of the fact." CDIL–L.R. 7.1(D)(2)(b)(6).

JAB Management moved for summary judgment on Osborn's overtime pay claim. Osborn responded, but the district court determined that she failed to comply with the local rules as just described. In its discretion, the court permitted Osborn to amend her response to correct the deficiencies. Osborn filed an amended response. But she again failed to comply. More specifically, her amended response did not "list by number each fact from" JAB Management's summary judgment motion. CDIL–L.R. 7.1(D)(2)(b). Instead, Osborn developed her own list of facts and responded to those. As a result, the district court could not determine to which of JAB Management's facts Osborn's individual responses corresponded.

The court struck Osborn's amended response after her second failure to comply with the rules. *See* FED. R. CIV. P. 56(e)(4) (district courts may "issue any other appropriate order" when parties fail to comply with the summary judgment rules). As a result, Osborn was deemed not to have responded to JAB Management's undisputed material facts. So, under the local rules, those facts were considered admitted. CDIL–L.R. 7.1(D)(2)(b)(6). But because courts view facts in the light most favorable to the nonmoving party at summary judgment, *Walters v. Pro. Lab. Grp., LLC*, 120 F.4th 546, 548 (7th Cir. 2024), the district court decided it would still consider the additional material facts Osborn offered in her response insofar as the evidentiary record supported them.

On appeal, Osborn concedes the district court did not abuse its discretion in enforcing the local rules. We therefore proceed on the same record. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (explaining this court's willingness to strictly enforce local rules).

**B**

Advanced Correctional Healthcare (ACH) contracts with localities to provide inmates with medical care. JAB Management is a wholly owned subsidiary of ACH responsible for hiring employees to work for some of ACH's other subsidiaries, including Advanced Inmate Medical Management. Advanced Inmate Medical manages ACH's electronic medical records system—a system that healthcare personnel rely on to track the provision of inmate care.

JAB Management hired Osborn as an administrative assistant in 2009. She was promoted several times, and, as a result, began to work more with Advanced Inmate Medical's records system. Among her new responsibilities were troubleshooting software issues and overseeing a database that tracked the system's quality. By 2016, Osborn was promoted to technical support specialist. In that role, she started providing on-call support to ACH customers, including on issues related to the records system.

JAB Management designated the technical support specialist position as salaried. As a result, Osborn says she could not enter time outside of 8:00 a.m. to 5:00 p.m. into her employer's timekeeping system. The position was also designated as remote. According to one of her supervisors, although typical business hours were 8:00 a.m. to 5:00 p.m., Osborn's remote position offered her the flexibility to design her own schedule. Osborn did not keep track of any time she worked over forty hours. But she claims she worked an average of ten hours per day and fifteen hours of overtime per week. Osborn says she regularly had to work outside of normal business hours to take support calls, respond to emails, drive to client sites, and "patch servers." She also submits that

she worked Saturdays and Sundays, though the extent of that work depended on the weekend.

Toward the end of Osborn's employment with JAB Management, her supervisors became increasingly dissatisfied with her ability to communicate and manage her workload. According to one supervisor, Osborn failed to explain what she was working on throughout the day, yet she complained about having too much to do. Some of Osborn's tasks were reassigned to her coworkers. And she received coaching. Nonetheless, she continued to have trouble finishing her work. Osborn was terminated on August 2, 2021.

Following her termination, Osborn sued JAB Management. She alleged, among other things, that her employer failed to pay her overtime in violation of the FLSA. JAB Management moved for summary judgment on the claim. Although the company designated Osborn's position as salaried, it agreed for purposes of its motion to treat her as a non-exempt employee eligible for overtime pay. JAB Management also did not dispute Osborn's contention that, assuming it violated the FLSA, it did so willfully, and, as a result, a three-year statute of limitations applied. 29 U.S.C. § 255.

Accordingly, the district court analyzed whether Osborn produced sufficient evidence to show JAB Management failed to pay her overtime at any point between February 23, 2019 (three years before she sued) and August 2, 2021 (the day she was terminated). The court invoked the standard of proof that applies to overtime pay cases in which an employer fails to maintain accurate time records. It held that Osborn failed to "prove by a just and reasonable inference the amount and extent of work she performed during the relevant time period."

## II

The FLSA guarantees non-exempt employees time-and-a-half pay for any work performed in a week over forty hours. 29 U.S.C. § 207(a)(1); *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 44 (2023). An employee who claims she has not been fully compensated by her employer "bears the burden of proving that she performed overtime work." *Brown v. Fam. Dollar Stores of Ind., LP*, 534 F.3d 593, 594 (7th Cir. 2008). Once she carries that initial burden of showing a violation of the FLSA, the employee "must [also] establish damages." *Id.* at 595. Assuming an employer has complied with its duties under the FLSA to keep accurate time records, 29 U.S.C. § 211(c), the employee should be able to do so with little difficulty. *Brown*, 534 F.3d at 595. She can simply point to her employer's records to show the extent of her unpaid overtime. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds by* Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251–62.

But establishing damages proves more challenging when an employer has failed to keep time records or when those records are inaccurate. Indeed, "[e]mployees seldom keep such records themselves," making it difficult to show "the precise extent of uncompensated work." *Id.* The Supreme Court has long recognized that an employee should not be "penalize[d]" for her employer's failure to comply with the FLSA's recordkeeping requirements. *Id.* So, in circumstances where an employee has established a violation of the FLSA but cannot rely on her employer's records to prove her damages with perfect precision, a relaxed burden of proof applies. *Id.* The employee need only "produce[] sufficient evidence to show the amount and extent of [her] work as a matter of just

and reasonable inference." *Id.* "The burden then would shift to the employer to produce evidence of the precise amount of work performed or to negate the reasonableness of the inference to be drawn from the employee's evidence." *Brown*, 534 F.3d at 595 (citing *Anderson*, 328 U.S. at 687–88).

We pause to clarify a point lost thus far in this litigation. The just and reasonable inference standard "applies to damages questions only *after* an employee has met the initial burden to 'establish[] liability' by showing that the employee performed uncompensated overtime work." *Viet v. Le*, 951 F.3d 818, 822 (6th Cir. 2020) (alteration in original) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 603 (6th Cir. 2009)); *see also Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013). The standard does not apply to the employee's threshold burden of proving a violation of the FLSA. On that question—"whether the plaintiff worked overtime at all"—the typical burden of proof applies. *Viet*, 951 F.3d at 822. At summary judgment, that means Federal Rule of Civil Procedure 56 governs. *See Melton v. Tippecanoe County*, 838 F.3d 814, 819 (7th Cir. 2016) ("FLSA plaintiffs are still bound to the requirements of Rule 56."). Under Rule 56, an employee "must show what evidence [she] has that would convince a trier of fact to" agree that her employer violated the FLSA. *See Diadenko v. Folino*, 741 F.3d 751, 757–58 (7th Cir. 2013) (quoting *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)). If the employee can overcome summary judgment by showing there is a genuine dispute of material fact as to whether she worked uncompensated overtime, FED. R. CIV. P. 56(a), then the damages question becomes relevant. And so too does the just and reasonable inference standard.

The Supreme Court's decision in *Anderson* confirms that the relaxed burden of proof applies only to the damages issue. There, the Court first announced the just and reasonable inference standard. *Anderson*, 328 U.S. at 687. After doing so, it responded to a concern that the new standard might "be condemned by the rule that precludes the recovery of uncertain and speculative damages." *Id.* at 688. The Court did not think so. The employees claimed to work forty hours per week before counting time spent walking to their workstations and preparing for their shifts. *Id.* at 683–84; *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 475 (2016) (Thomas, J., dissenting) (examining the record in *Anderson*). But the Court held that the employer was required to compensate its employees for those preliminary activities. *Anderson*, 328 U.S. at 690–93 (overruled by 29 U.S.C. §§ 252, 254). So, accounting for that additional time, the employees necessarily worked more than forty hours per week. "The damages [were] therefore certain." *Id.* at 688. And the uncertainty was limited to "the amount of damages arising from the statutory violation." *Id.* It was "enough under [those] circumstances" for the employees to prove "the extent of the damages" by a just and reasonable inference. *Id.*

We acknowledge that some of our prior opinions can be read as conflating liability and damages by applying the relaxed standard of proof to both issues. *See Melton*, 838 F.3d at 817–20 (invoking the just and reasonable inference standard to conclude the district court correctly found that the plaintiff failed "to establish a FLSA violation"). At other times, though, this court has adhered more closely to *Anderson,* explaining that the just and reasonable inference standard is limited to the damages question. For instance, in *Brown* we said that "[t]he *Anderson* test addresses whether there is a reasonable

basis to calculate damages, and assumes that a violation of the FLSA ha[s] been shown." 534 F.3d at 596. There, the employee "raise[d] a genuine issue of fact as to whether she was not properly paid overtime in violation of the FLSA" and thus satisfied her threshold burden under the Rule 56 standard. *Id.* at 596–97. Only then did the court examine whether the employee was able to prove her damages by a just and reasonable inference. *Id.* at 597 ("[T]he remaining question is whether th[e] *Anderson* standard is met."). We take this opportunity to clarify that the approach we took in *Brown* is more consistent with *Anderson*, and it is the approach courts in our circuit should follow going forward.

With the appropriate standards of proof in place, we analyze first whether Osborn has come forward with sufficient evidence to survive summary judgment on the question of JAB Management's liability.

## III

The district court ruled that Osborn could not carry her initial burden of showing a violation of the FLSA, finding she "failed to prove the amount and extent of her work, *let alone work in excess of forty hours a week*, as a matter of just and reasonable inference." (emphasis added). We review that decision de novo. *Est. of Biegert ex rel. Biegert v. Molitor*, 968 F.3d 693, 698 (7th Cir. 2020). As explained, the just and reasonable inference standard does not apply to the threshold liability issue—an issue that remains contested because JAB Management has not admitted that it required Osborn to work overtime. We therefore proceed, as courts must, by analyzing this question under the ordinary Rule 56 standard.

**A**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If "the nonmoving party will bear the burden of proof at trial," that party must "designate specific facts showing that there is a genuine" dispute such that the court should allow her claim to proceed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In other words, the nonmovant must come forward with enough evidence to place her "version of events" beyond the level of mere "speculation or conjecture." *Molitor*, 968 F.3d at 701 (quoting *King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981, 986 (7th Cir. 2020)). Conclusory evidence offered without a factual foundation is insufficient. *Viet*, 951 F.3d at 823 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990)); *see also Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690–91 (7th Cir. 2010). And although we construe the record facts in the light most favorable to the nonmoving party, "our favor … does not extend to drawing inferences that are supported by only speculation or conjecture." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (internal alterations and quotations omitted).

**B**

We assess whether Osborn has come forward with sufficient, non-conclusory evidence that would allow a rational

trier of fact to conclude that she worked uncompensated overtime.

The Sixth Circuit's decision in *Viet v. Le* is instructive. Like Osborn, the employee there, Quoc Viet, accused his employer of violating the FLSA by failing to pay him time-and-a-half for overtime. *Viet*, 951 F.3d at 821. He worked for a copier resale company and claimed to work sixty hours per week. *Id.* at 820. Viet set his own schedule, and when asked during a deposition to describe his typical routine, "[h]e offered no estimate of his daily hours." *Id.* at 824–25. The employee could only supply vague and sometimes inconsistent descriptions of the time he spent on various tasks. *Id.* at 825. He did not provide a straight answer on "the time required for his duties," nor did he come forward with evidence "show[ing] how often he did them." *Id.*

The Sixth Circuit held that Viet failed to "create a genuine dispute of material fact under Rule 56" as to whether he logged more than forty hours per week. *Id.* at 824. The court explained that employees cannot rely on vague and conclusory allegations about their schedules to overcome summary judgment on FLSA overtime pay claims. *Id.* at 824 (citing *Turner*, 595 F.3d at 690–91). While employees need not describe their schedules "with perfect accuracy," they should be able to offer "testimony coherently describ[ing]" their typical workweeks. *Id.* (quoting *Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015)). Viet could not do so. His claim could only "withstand summary judgment," the court reasoned, "if [it] adopted a legal rule that conclusory estimates about an employee's average workweek allow a rational jury to conclude that the employee worked overtime." *Id.* at 825. Understandably, the Sixth Circuit was unwilling to fashion such a rule.

Based on the record before us—one complicated by Osborn's failures to comply with the local rules—this case proves highly analogous to *Viet*. To start, Osborn's job description indicated her position "operate[d] in a remote office setting." The description also listed her hours as 8:00 a.m. to 5:00 p.m., Monday through Friday. Yet, by failing to respond to JAB Management's statement of undisputed material facts, Osborn admitted that, like Viet, she was free to design her own schedule.

So, what did Osborn's typical schedule look like? She alleged she worked an average of fifteen hours per week of overtime. But her evidence lacks the specificity required for a reasonable jury to understand how she reached that figure. At her deposition, Osborn was asked to explain how she calculated her overtime estimate. She said: "I figure I work at least ten hours a day and on the weekends, it was pretty easy to come up with that, a norm." When pressed on what she did for ten hours a day, her response—much like Viet's description of his job duties—was vague. She answered: "Customer issues, the database, the reports, it is very labor intensive." Absent from the record is any accounting of how long it took Osborn to complete those "labor intensive" tasks or how often she engaged in them throughout the workweek. As to the number of hours she spent working weekends, all Osborn could say was that sometimes she worked a couple of hours and sometimes she worked all day. Osborn claims several of her former coworkers could testify regarding the number of hours she worked in a week. But, as the district court observed, she failed to offer their sworn testimony. Simply identifying the individuals does little to support Osborn's contention that she worked more than forty hours per week. As in *Viet*, the evidence in this record proves too vague and

conclusory for a rational trier of fact to agree Osborn worked uncompensated overtime.[1]

In addition to lacking specificity, Osborn's evidence of her schedule is inconsistent. Consider, for example, her duty to deal with customer issues. Osborn claims JAB Management was understaffed and that she was the sole employee responsible for providing on-call customer support from February 2020 to August 2021. But she also admitted that the number of calls she fielded substantially declined in April 2020 thanks to improvements made to ACH's electronic medical records system. One would expect Osborn's alleged overtime to have declined as well. Yet, she says she worked ten hours per day and fifteen hours of overtime per week across the entire period at issue.

Consider also her database-related duties. Osborn admitted in her deposition that her time working on databases was largely cabined to the final year and a half of her employment. When asked what she did for ten hours per day before starting on the databases, Osborn responded vaguely: "Trying to

---

[1] Recall that the relevant time period here is from February 23, 2019, to August 2, 2021. Osborn believes she began working remotely (and thus had the flexibility to build her own schedule) approximately a year or a year and a half before she signed an official offer of remote work on February 23, 2021. That would mean she worked in-office for some portion of the relevant period.

Ultimately, though, that does not alter our decision that Osborn has failed to prove she worked uncompensated overtime, as she has not come forward with sufficient evidence of her typical schedule in-office or out. If anything, that Osborn cannot affirmatively say when she began working remotely lends more credence to our conclusion that her evidence lacks the minimal level of specificity necessary to overcome summary judgment.

work on different tests, and different ways to make the data full, and just all kinds of things."

Because Osborn's evidence of her daily schedule lacks specificity and suffers from inconsistencies, we are left to speculate as to how many hours she worked per week. A jury would be left guessing too. Speculation will not do. *Argyropoulos*, 539 F.3d at 737; *see also Matsushita Elec. Indus. Co.*, 475 U.S. at 586 (1986) (A nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts" of her case). Osborn was under no obligation to rebuild her schedule with precision. But the evidence she has produced fails to provide us with even a general sense of her typical workweek.

If this claim survived summary judgment, then any FLSA claim in which the employee vaguely describes her schedule as having exceeded forty hours per week would reach a jury. Indeed, the record before us—though viewed in the light most favorable to Osborn—is undoubtedly skewed toward JAB Management based on Osborn's failures to comply with the local rules. As demonstrated here, failing to abide by the local rules has real consequences. *See Waldridge*, 24 F.3d at 922.

Osborn has not carried her initial burden of showing she worked unpaid overtime at all. JAB Management is thus entitled to summary judgment.

**IV**

Absent a genuine issue of material fact on the threshold question of whether JAB Management violated the FLSA, we need not reach the damages issue. The district court concluded, however, that Osborn could not prove the amount and extent of her damages by a just and reasonable inference.

And the parties focused their briefing on that issue. So, assuming for the sake of argument that Osborn successfully "establishe[d] a violation of the FLSA," *Brown*, 534 F.3d at 595, we next consider whether she "produce[d] sufficient evidence to show the amount and extent of [her overtime] work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. Once again, our review of the district court's decision is de novo. *Molitor*, 968 F.3d at 698.

## A

Under the FLSA, employers are responsible for keeping accurate employee time records. 29 U.S.C. § 211(c). When an employee lodges a claim against her employer for failing to pay overtime, she can seek those records to prove the amount of unpaid time. *Anderson*, 328 U.S. at 687. As explained, the Supreme Court has "recognized that where an employer failed to keep the proper and accurate records required by the FLSA, the employer rather than the employee should bear the consequences of that failure." *Brown*, 534 F.3d at 595. In those circumstances, the employee need only prove her damages by a just and reasonable inference, rather than demonstrate the "precise extent of uncompensated work." *Anderson*, 328 U.S. at 687.

The just and reasonable inference standard is a relaxed one. We have said, for instance, that an employee can prove damages by relying on her own recollection. *Melton*, 838 F.3d at 819; *see also Mazurek v. Metalcraft of Mayville, Inc.*, 110 F.4th 938, 943 (7th Cir. 2024) (explaining that "an employee's time can be reconstructed from memory"). The employee can also approximate the extent of her overtime "from the particulars of the jobs [she] did." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013). And she can point to "'triggering

factors' that would … signal[] extended work hours." *Brown*, 534 F.3d at 597.

The burden of proof may be relaxed, but it remains a burden nonetheless. To overcome summary judgment, an employee must at least have "a reasonably reliable story." *Melton*, 838 F.3d at 819. She cannot, for example, prove the amount and extent of her uncompensated overtime based on "unsupported ipse dixit." *Id.* (quoting *Turner*, 595 F.3d at 690). Nor can her version of events be "so 'internally inconsistent or implausible on its face' that 'no reasonable person would believe it.'" *Id.* (quoting *Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997)).

**B**

JAB Management designated Osborn's position as salaried. As a result, Osborn says she was not permitted to log any hours worked outside of 8:00 a.m. to 5:00 p.m. into JAB Management's timekeeping system. Necessarily, then, those records were inaccurate, and the just and reasonable inference standard applies. *Anderson*, 328 U.S. at 687. JAB Management does not contest this point. The only disagreement is whether Osborn produced enough evidence to overcome the relaxed burden of proof. She has not.

*Melton* helps explain why. There, we held that, although an employee may rely on his own recollection to satisfy the just and reasonable inference standard, he still must offer "a reasonably reliable" version of events to overcome summary judgment. 838 F.3d at 819. The employee in that case claimed he worked through his lunches without receiving compensation in violation of the FLSA. *Id.* at 817. As evidence of the extent of his overtime, he offered a spreadsheet of his hours worked. *Id.* "The source of information for the spreadsheet

was his own memory." *Id.* at 819. While this did not pose an issue, the court nonetheless concluded that the spreadsheet failed to establish the employee's damages by a just and reasonable inference. That was because other evidence in the record severely undermined the document's veracity. *Id.* at 819–20. As the court explained, an employee bears the burden of offering more than ipse dixit and "internally inconsistent or implausible" evidence to satisfy even the relaxed damages standard of proof. *Id.* at 819 (quoting *Seshadri*, 130 F.3d at 802). The employee in *Melton* ultimately fell short.

Based on the record before us, Osborn cannot satisfy the just and reasonable inference standard elucidated in *Melton*. For one, she relies on her own vague, self-serving testimony to prove the extent of her damages. Osborn says she regularly worked ten hours a day, on weekends, and fifteen hours per week in overtime. As already discussed, though, her assertions lack factual specificity. Bare assertions fail to move an employee's overtime claim from implausible to reasonably believable. *See Melton*, 838 F.3d at 819.

For another, much of Osborn's proffered evidence lacks internal consistency or is otherwise "flatly refuted." *Id.* (quoting *Turner*, 595 F.3d at 690). Again, she says she was the only employee to provide clients with on-call support for approximately seventeen months. To her, this helps prove the amount and extent of her damages. Yet, she admitted that within months of becoming the only employee to provide support, the number of calls fell off dramatically. She says part of her ten-hour days were spent working on databases. That work, though, began only toward the end of her employment. And, she says, she worked at least fifteen hours of overtime weekly. But Osborn failed to respond to JAB Management's evidence

showing her supervisors reduced her workload by reassigning tasks to other employees.

The Eighth Circuit's decision in *Holaway v. Stratasys*, 771 F.3d 1057 (8th Cir. 2014), further supports this analysis. Like Osborn, the employee in *Holaway*—a field service engineer—sought "damages based on his approximation he worked 60 hours per week every week of his employment." *Id.* at 1058. He reached the overtime calculation "based on … recollections of his daily activities." *Id.* (internal alterations and quotations omitted). Those activities included time spent preparing for his job duties, driving to client sites, and working on administrative tasks over the weekends. *Id.* Applying the just and reasonable inference standard, the Eighth Circuit concluded the employee failed to sufficiently prove his damages. *Id.* at 1059. According to the court, all he "put forth [were] contradictory and bare assertions of his overtime hours." *Id.* Indeed, he "provided only vague testimony and failed to reference specific days and hours worked." *Id.* at 1060. A jury would not have been able to determine the amount and extent of the employee's overtime absent more specific evidence. *Id.*[2]

Osborn's claim fails for the same reasons. She has offered vague and unsupported assertions about working ten hours per day and over the weekends. While she has identified several "time-consuming duties" she was responsible for—including taking calls, developing reports, and working on

---

[2] We do not understand *Holaway* to require—nor should our opinion be read to require—that a plaintiff identify specific dates or times when she worked overtime, so long as she otherwise offers enough information about her routine to support a just and reasonable inference as to the extent of her uncompensated overtime.

databases—she has not provided details as to how long those duties took or how often she did them. Her evidence would not permit a jury to infer the amount of overtime she worked during the relevant time period. Osborn has thus failed to meet even the low burden of proving her damages by a just and reasonable inference.

Osborn raises two arguments to the contrary that merit discussion. First, she says the district court improperly relied on *Holaway*, which she submits imposes a more demanding burden of proof on employees and thus conflicts with Seventh Circuit precedent.

Her contention is incorrect. *Holaway* stands for the proposition that an employee cannot overcome even the relaxed just and reasonable inference standard based on a bare assertion of working more than forty hours per week. 771 F.3d at 1059. That is entirely consistent with this court's precedent. Again, in *Melton*, we laid down a similar rule, explaining that a plaintiff may not "survive summary judgment where his recollection is 'flatly refuted' by other evidence in the record." 838 F.3d at 819 (quoting *Turner*, 595 F.3d at 690). Nor may a plaintiff overcome summary judgment when his version of events is inconsistent or facially unbelievable. *Id.* The district court relied on *Holaway* for the same reason we do: It is factually analogous to this case. Because *Holaway* does not conflict with our precedent, that was not an error.

Second, Osborn argues she has identified several triggering factors that signal the extent of her overtime work. This court first discussed triggering factors in *Brown*, 534 F.3d at 597. A triggering factor is evidence an employee identifies as "signal[ing] extended work hours." *Id.* at 597. The employee in *Brown*, for example, pointed out that she was the sole

individual with a key to open and close a Family Dollar store. *Id.* at 596. If the employee was not present for opening and closing shifts, the store would not have been able to operate. So, the evidence served as a triggering factor that helped show she worked an additional one to two hours both before and after the time she logged during the store's normal business hours. *Id.* at 596–98. In other words, because the evidence helped prove the employee was present to open and close the store, it "provide[d] a basis for inferring the extra hours worked." *Id.* at 597 (citing *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1317 (11th Cir. 2007)).

According to Osborn, emails and calls she responded to outside of normal business hours, tasks she completed at odd times, and travel she engaged in all serve as triggering factors that prove her overtime by a just and reasonable inference. But these proposed triggering factors are not as helpful as Osborn hopes, as they fail to establish "an approximation as to … [her] unpaid compensation." *Brown*, 534 F.3d at 598.

Osborn points to emails she sent outside of normal business hours. The district court was correct that these emails do not establish the amount of work she had to put in to send them. Nor do we know whether composing the emails constituted overtime because Osborn has not offered evidence of what other work she performed during the weeks she sent them. Osborn's testimony that she took calls outside of business hours suffers from the same deficits.

For her next triggering factor, Osborn directs us to certain duties she completed at odd hours—including server patches, which she says needed to be done at night. According to Osborn, she patched servers monthly for at least three hours. To her credit, she at least described how long this task took. But

it remains unclear what other work she accomplished on the days and weeks she conducted the patches. Contrast that with *Brown* where the employee showed she was necessarily at the store for opening and closing shifts *in addition* to normal operating hours. 534 F.3d at 597–98. That provided the court with an approximation of her unpaid overtime hours, *id.*, in a way Osborn's evidence of conducting patches does not.

Osborn further argues that an email purporting to show she spent ten hours driving to a jail on one occasion serves as a triggering factor. Putting aside that this is the only instance of extended travel she offered, the proposed triggering factor misses the mark for the same reason as the last. The record is silent on what other work she completed that week, so the ten-hour drive does not allow for an estimate of her damages.

In the end, not one of Osborn's proposed triggering factors would allow a trier of fact to approximate the extent of her overtime, even by a just and reasonable inference.

Finally, because Osborn has failed to show the amount and extent of her damages by a just and reasonable inference, we need not consider whether JAB Management came "forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence" under the *Anderson* burden-shifting framework. 328 U.S. at 687–88.

## V

In an overtime pay case like this one, an employee bears the burden to prove a violation of the FLSA. To survive summary judgment, the employee must show there is a genuine issue of material fact as to whether she worked overtime at all. Osborn has failed to overcome that initial burden. Even if

she had, the burden remained with Osborn to prove her damages by a just and reasonable inference. Based on the record before us, she cannot clear that hurdle either. The district court's decision granting JAB Management's motion for summary judgment is therefore AFFIRMED.