In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 25-2134

IN RE: GREENPOINT TACTICAL INCOME FUND LLC,

*Debtor.*

———————————

BALLARD SPAHR LLP,

*Appellant,*

*v.*

OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS,

*Appellee.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:21-cv-00175 — **Pamela Pepper**, *Chief Judge.*

———————————

ARGUED JANUARY 27, 2026 — DECIDED FEBRUARY 27, 2026

———————————

Before ST. EVE, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Greenpoint Tactical Income Fund ("GTIF"), an investment fund focused on gems and fine minerals, filed for bankruptcy in October 2019. In the ensuing

proceedings, the law firm Ballard Spahr LLP filed a claim for $236,717 in unpaid legal fees. Michael Hull, who controlled one of the two limited liability companies ("LLC") that served as GTIF's managing members, incurred those Ballard fees. Ballard, however, insisted GTIF was on the hook for Hull's outstanding balance. The bankruptcy and district courts below thought otherwise, granting and affirming summary judgment to the Official Committee of Equity Security Holders ("Equity Committee"), which objected to Ballard's claim. We affirm.

## I. Background

GTIF, a Wisconsin-based LLC, had two managing members: Greenpoint Asset Management II LLC ("GAM") and Chrysalis Financial LLC. Hull controlled the former, as well as an unrelated investment firm called Bluepoint Investment Counsel LLC. Christopher Nohl controlled the latter.

In 2017, GTIF, GAM, Chrysalis, Hull, Nohl, and Bluepoint found themselves the subjects of Department of Justice and Securities and Exchange Commission investigations into possible securities law violations relating to the solicitation of investments in GTIF. So in August of that year, Hull engaged Ballard to represent him and Bluepoint in connection with those investigations. Hull engaged Ballard again the following January, as GTIF investors prepared to commence arbitration proceedings against the fund and its leadership for alleged violations similar to those underlying the federal investigations. Hull and Ballard memorialized both of these engagements in signed writings, neither of which referred to any payment obligation belonging to GTIF. Rather, in the second engagement letter, Ballard requested that Hull remit

$15,000 for a retainer and $5,775.75 for the outstanding balance on the first engagement.

During the ensuing arbitration proceedings, some of Ballard's efforts—working with an expert, leading depositions, managing document discovery, and assisting with brief drafting—accrued to the benefit of all respondents (including GTIF), not just its clients, Hull and Bluepoint. As for payment, Ballard issued its invoices to Hull at one of his non-GTIF addresses, but the record contains two GTIF checks payable to Ballard totaling $57,500, both listing "Axelrod"—the partner leading Hull's engagement—in the "Memo" line. Ballard still had an outstanding debt owed in the amount of $236,717.

On October 4, 2019, GTIF filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The following February, Ballard filed a claim against GTIF for the unpaid legal fees. The Equity Committee, which the United States Trustee had appointed under 11 U.S.C. § 1102(a)(2) to represent those holding equity in GTIF, objected to Ballard's claim, contending GTIF had no liability for Hull's debt to Ballard. Two weeks later, GTIF—through Hull—filed an amended list of unsecured creditors listing, for the first time, a debt to Ballard in the slightly reduced amount of $230,000.

In December 2020, the Equity Committee moved for summary judgment on its objection to Ballard's claim. In response, Ballard identified three grounds on which it was entitled to enforce Hull's debt against GTIF: an alleged oral promise made by GTIF's managing members to assume Hull's debt, enforceable notwithstanding the Wisconsin statute of frauds; promissory estoppel, in the event the statute of frauds applies; and indemnification rights under Wisconsin law and GTIF's operating agreement. Rejecting each of them, the bankruptcy

court granted summary judgment to the Equity Committee. Ballard appealed to the district court, which affirmed.

*        *        *

A brief postscript: The SEC's case against GTIF, GAM, Chrysalis, Hull, Nohl, and Bluepoint proceeded to trial. As the district court summarized it, the SEC's case charged Hull, Nohl, and their associated entities with "violating various federal securities laws and regulations by knowingly or recklessly inflating the value of their funds' investments in gems, minerals, and an environmental remediation company, then paying themselves handsome management fees based on these inflated valuations, as well as misleading investors further by reporting nonexistent income." *SEC v. Bluepoint Inv. Couns., LLC*, No. 19-cv-809, 2025 WL 2582005, at *1 (W.D. Wis. Sep. 5, 2025). The jury found them liable on nine counts arising out of these violations of the securities laws. With the exception of GTIF, which (post–chapter 11) is in new hands, the court held the defendants jointly and severally liable for $12.5 million in disgorgement and $3.5 million in prejudgment interest. *See id.* at *7. The court ordered Hull and Nohl to pay $5 million each in civil penalties. *Id.*

## II. Discussion

We review the district court's decision to affirm the bankruptcy court's grant of summary judgment de novo. *Dick ex rel. Amended Hilbert Residence Maint. Tr. v. Conseco, Inc.*, 458 F.3d 573, 577 (7th Cir. 2006). Because Federal Rule of Bankruptcy Procedure 7056, which governs summary judgment, incorporates by reference Federal Rule of Civil Procedure 56, the familiar summary judgment standards generally applicable to civil actions control here.

Under those standards, the Equity Committee is entitled to summary judgment if no "reasonable jury could return a verdict for" Ballard. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ballard must "'designate specific facts showing that there is a genuine' dispute such that the court should allow [its] claim to proceed." *Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1258 (7th Cir. 2025) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). While it can satisfy that obligation with an affidavit or declaration,[1] it "cannot rest 'upon conclusory statements in affidavits'"; Ballard instead "must go beyond the pleadings and support [its] contentions with proper documentary evidence." *Foster v. PNC Bank, Nat'l Ass'n*, 52 F.4th 315, 320 (7th Cir. 2022) (quoting *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021)). And while "we construe the record facts in the light most favorable to the nonmoving party, 'our favor … does not extend to drawing inferences that are supported by only speculation or conjecture.'" *Osborn*, 126 F.4th at 1258 (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)).

Ballard asserts three bases to find its claim enforceable against GTIF: an oral promise outside the scope of the statute of frauds, promissory estoppel, and statutory and contractual indemnification rights. The parties agree that Wisconsin law governs the viability of Ballard's claim. *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000) ("Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any

---

[1] A declaration under 28 U.S.C. § 1746 "is equivalent to an affidavit for purposes of summary judgment." *Craig v. Wrought Washer Mfg., Inc.*, 108 F.4th 537, 543 n.14 (7th Cir. 2024).

qualifying or contrary provisions of the Bankruptcy Code. The 'basic federal rule' in bankruptcy is that state law governs the substance of claims …." (quoting *Butner v. United States*, 440 U.S. 48, 57 (1979))). As explained below, Ballard cannot prevail on any of these three bases.

**A. Oral Promise and the Statute of Frauds**

Ballard contends GTIF orally agreed to pay its fees from its engagements with Hull. The law firm concedes it did not reduce the agreement—which it says was crucial to its performance of the engagements—to writing. The Equity Committee responds by invoking Wisconsin's statute of frauds, under which a "special promise to answer for the debt, default or miscarriage of another person" is unenforceable absent a signed writing. Wis. Stat. § 241.02(1)(b).

Resolving this dispute turns on the subtle but critical distinction between two types of promises. On one hand, "a 'collateral' promise to pay another's debt upon the other's breach of his or her primary promise" falls within the scope of the statute of frauds. *Brennan, Steil, Basting & MacDougall, S.C. v. Colby*, 525 N.W.2d 273, 275 (Wis. Ct. App. 1994). On the other hand, "the promisor's own 'primary' promise to assume the debt himself or herself" falls beyond it. *Id.*; *see Prize Steak Prods., Inc. v. Bally's Tom Foolery, Inc.*, 717 F.2d 367, 369 (7th Cir. 1983). Ballard therefore must show that GTIF orally promised to assume Hull's debt regardless of whether he defaulted; it would not be enough to show that GTIF promised only to backstop Hull's obligation. In determining whether a promise is primary or collateral, which is a question of fact, relevant considerations include "[t]he form of the promise, the nature of the consideration, the language of the promise used in light of the circumstances, [and] the motive and object

of making the promise." *Mann v. Erie Mfg. Co.*, 120 N.W.2d 711, 715 (Wis. 1963). Ultimately, however, the determination turns on "all the evidence." *Id.*

To prove the existence and nature of GTIF's oral agreement, Ballard almost exclusively relies on a declaration that David Axelrod, its lead partner for the Hull engagements, submitted during discovery. The declaration stated in relevant part:

> In connection with Ballard Spahr's engagement, GTIF, through its managing members, orally agreed with Ballard Spahr to pay the fees and expenses of Ballard Spahr in connection with the Proceedings (the "Fee Agreement"). The agreement was not conditional. Ballard Spahr would not have undertaken the engagement it did without assurance of payment by GTIF.

Beyond the declaration, Ballard relies on the facts that GTIF paid ten of its invoices and that GTIF (through Hull) scheduled a $230,000 debt to Ballard during the bankruptcy proceedings.

Starting with the declaration, we agree with the courts below that its "conclusory assertion falls far short of creating a triable issue of fact" on whether GTIF made the alleged primary promise. *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017). Axelrod merely asserts that GTIF made the promise in question, but he cites no supporting documentation, nor does he specify any pertinent details, such as who said what and when. Such a declaration does not suffice to defeat a motion for summary judgment. *See, e.g.*, *Foster*, 52 F.4th at 321; *King*, 872 F.3d at 840; *Bordelon v. Bd. of Educ. of the City of Chi.*,

811 F.3d 984, 989, 991 (7th Cir. 2016) ("[C]onclusory state-
ments, not grounded in specific facts, are not sufficient to
avoid summary judgment." (quoting *Lucas v. Chi. Transit
Auth.*, 367 F.3d 714, 726 (7th Cir. 2004))). Critically, without the
Axelrod declaration, Ballard lacks any evidence of "important
considerations" like "the form of the promise" and "the lan-
guage of the promise." *Marshall v. Bellin*, 133 N.W.2d 751, 752
(Wis. 1965).

Ballard protests that rejecting this portion of the Axelrod
declaration as conclusory improperly weighs the evidence
and makes a credibility determination. But courts are within
their rights to "observe[] that [an] affidavit did not contain
any facts—as opposed to conclusions," *King*, 872 F.3d at 840,
and to therefore "find affidavits and other forms of evidence
as insufficient or conclusory as a legal matter at the summary
judgment stage," *Foster*, 52 F.4th at 320.

Ballard also identifies two pieces of evidence that it claims
create a triable issue of fact: GTIF's payment of some invoices
and its scheduling of the $230,000 debt. Neither of those facts,
however, speak to the relevant question under the statute of
frauds, which is not whether GTIF had *any* obligation to Bal-
lard but whether it had a *primary* one. *See Prize Steak Prods.*,
717 F.2d at 369. Of course, Ballard is entitled to the benefit of
reasonable inferences, but we will not "draw[] inferences that
are supported by only speculation or conjecture." *Osborn*, 126
F.4th at 1258 (quoting *Argyropoulos*, 539 F.3d at 732); *see Foster*,
52 F.4th at 320 ("Mere speculation cannot 'be used to manu-
facture a genuine issue of fact.'" (quoting *Weaver*, 3 F.4th at
934)). No reasonable inference could lead a factfinder to find
in Ballard's favor where it has no evidence of the promise it-
self and the evidence it does have is not tethered to the

dispositive question under Wisconsin law. The statute of frauds thus bars Ballard's attempt to enforce GTIF's oral promise on a contract theory.

## B. Promissory Estoppel

As there is no genuine issue of material fact on the statute of frauds, we turn to Ballard's alternative argument that GTIF's oral promise is enforceable under promissory estoppel.[2] In Wisconsin, that cause of action has three elements: (1) the promise was "one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee"; (2) the promise "induce[d] such action or forbearance"; and (3) injustice can "be avoided only by enforcement of the promise[.]" *Hoffman v. Red Owl Stores, Inc.*, 133 N.W.2d 267, 275 (Wis. 1965); *see Scott v. Savers Prop. & Cas. Ins. Co.*, 663 N.W.2d 715, 729 (Wis. 2003). The first two elements present questions of fact, while the third "involves a policy decision by the court," one "necessarily embrac[ing] an element of discretion." *Hoffman*, 133 N.W.2d at 275. "Promissory estoppel is usually available only in limited circumstances and does not allow 'circumvention of carefully designed rules of contract law.'" *Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, 956 F.3d 950, 958 (7th Cir. 2020) (quoting *C.G. Schmidt, Inc. v. Permasteelisa N. Am.*, 825 F.3d 801, 807 (7th Cir. 2016)) (applying Wisconsin law).

No reasonable jury could conclude that Ballard satisfied its burden on the first element, so that is all we address.

---

[2] The parties dispute whether GTIF preserved its promissory estoppel argument. We assume without deciding that it did.

Promissory estoppel applies only "when the promise" upon which the plaintiff rests "is definite enough to induce a reasonable person to rely." *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 868 (7th Cir. 1999) (applying Wisconsin law). For that reason, in cases governed by Wisconsin law we have time and again scrutinized the promise on which the plaintiff allegedly relied to distinguish "[a] promise that is vague and hedged about with conditions" from "a firm promise that a reasonable person would expect to be carried out," with only the latter giving rise to a claim for promissory estoppel. *Skyrise Constr.*, 956 F.3d at 959 (quoting *Cosgrove v. Bartolotta*, 150 F.3d 729, 733 (7th Cir. 1998)); *see, e.g., id.* at 958–59; *Cosgrove*, 150 F.3d at 732–33; *C.G. Schmidt*, 825 F.3d at 809. Here, however, once we set aside the Axelrod declaration's conclusory assertion, the record contains no evidence of the promise itself. And without any evidence of the promise, no reasonable factfinder could conclude that the promise was "one which the promisor should reasonably expect to induce" reliance. *Hoffman*, 133 N.W.2d at 275. Unsurprisingly, Ballard has not identified any authority, from Wisconsin or otherwise, supporting its view that a plaintiff can carry its burden on the first element of promissory estoppel without evidence of what the promisor said or did to induce the promisee's reliance.

### C. Indemnification

Last, we address Ballard's contention that Hull has a right of indemnification against GTIF under both a Wisconsin

statute and GTIF's operating agreement, which impose substantially similar requirements.[3]

Start with the statute. So long as certain conditions not at issue here are satisfied, Wisconsin law requires LLCs to "indemnify … a person with respect to … any debt, obligation, or other liability incurred by the person by reason of the person's former or present capacity as a member or manager." Wis. Stat. § 183.0408(2).[4] In interpreting this provision, we must "discern[] the meaning of the statute's enacted language." *Serv. Emps. Int'l Union Healthcare Wis. v. Wis. Emp. Rels. Comm'n*, 22 N.W.3d 876, 879 (Wis. 2025). Wisconsin courts do so by prioritizing intrinsic sources of statutory meaning—that is, "those based on or derived from the enacted law itself"—which "include the statutory text at issue, related statutes and phrases, a statute's place within the statutory structure, its stated or textually manifest purpose, and statutory history." *Id.* Extrinsic sources like legislative history enter the picture only to resolve ambiguity or confirm the plain meaning derived from intrinsic sources. *See id*; *see also Wis. ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 681 N.W.2d 110, 123–26 (Wis. 2004).

---

[3] Because both courts below concluded Hull had no right of indemnification, neither reached the question whether Ballard would be entitled to assert that right to prove its claim. We follow suit.

[4] Wisconsin amended its LLC statute in 2022, but the prior indemnification requirement was the same in all respects relevant to this appeal. *See* 1995 Wis. Act 400, *repealed and recreated by* 2021 Wis. Act 258. We therefore need not determine which version of the statute governs the conduct at issue here. We assume for purposes of decision that the version currently in force does, as Ballard suggests.

The statute at issue does not cover Hull. Its plain text extends the indemnification obligation only to members and managers, but it is undisputed that Hull was neither. Recognizing this obstacle, Ballard counters that we will undercut the statute's purpose—protecting corporate decisionmakers from exposure—if we do not extend its indemnification requirement to Hull. This argument overlooks that the statute protects an LLC's decisionmakers as written—and here, those decisionmakers were GAM and Chrysalis, not Hull and Nohl.[5] Of course, Hull could have availed himself of the statutory indemnification requirement by opting to manage GTIF in his personal capacity. He decided instead to control GTIF through GAM, and that decision has consequences. *Cf. Krier v. Vilione*, 766 N.W.2d 517, 525–26 (Wis. 2009) ("[W]here an individual creates a corporation as a means of carrying out his business purposes he may not ignore the existence of the corporation in order to avoid its disadvantages." (quoting *Terry v. Yancey*, 344 F.2d 789, 790 (4th Cir. 1965))). At the very least, we see no "stated or textually manifest purpose" forceful enough to override the undisputedly clear statutory text.

Ballard's indemnification argument predicated on the operating agreement falters for similar reasons. Section 6.10(a) of GTIF's operating agreement provides in relevant part: "No Managing Member or Member shall be liable to the Company for any loss or damage suffered by the Company on account of any action taken or omitted to be taken by the Managing

---

[5] Ballard responds by stressing that GAM, as an LLC, can act only through Hull, its agent. That is true, but the inverse is not: Hull need not act through GAM—he may act through one of his other LLCs, like Bluepoint, or simply as himself. The record shows that is what happened here. Hull, not GAM, was Ballard's client for both engagements.

Member or Member….” Section 6.10(b) then obligates GTIF to “advance legal expenses and other costs incurred by any such Indemnified Person as a result of any such action or proceeding under Section 6.10(a).”

“An LLC’s operating agreement is a contract.” *Marx v. Morris*, 925 N.W.2d 112, 119 (Wis. 2019). The north star of contract interpretation is “giv[ing] effect to the parties’ intentions.” *Tufail v. Midwest Hosp., LLC*, 833 N.W.2d 586, 592 (Wis. 2013). Wisconsin courts do so not by evaluating “subjective intent” but rather by honoring the principle that “unambiguous contract language controls contract interpretation.” *Id.* (quoting *Kernz v. J.L. French Corp.*, 667 N.W.2d 751, 755 (Wis. 2003)). Thus, “where the terms of a contract are clear and unambiguous,” Wisconsin courts “construe the contract according to its literal terms.” *Id.*

GTIF’s operating agreement is clear and unambiguous: It explicitly defines “Member” and “Managing Member” to include only GAM and Chrysalis. Ballard, as before, seeks to circumvent the text by arguing that we will frustrate the intent of the operating agreement if we exclude Hull, who it claims was functioning as a manager, from the scope of § 6.10(a) and (b). Putting aside our skepticism that Hull acted as a manager of GTIF in retaining Ballard, in contract interpretation we “presume the parties’ intent is evidenced by the words they chose, if those words are unambiguous.” *Id.* They are—and Ballard does not contend otherwise—so Hull has no indemnification right under the operating agreement.

\*       \*       \*

The judgment of the district court is

AFFIRMED.